# Patrick Ryan and J. A. Webb v. Mary E. Potwin, Trustee.

1. AGENT—*When His Knowledge is to be Imputed to His Principal.*— Where the owner of premises permits his agent to let them and collect the rent, and the agent has knowledge, derived in so letting, that the premises are to be used for the purpose of gambling, such knowledge is to be imputed to the owner, and he can not recover rent.

2. RENT—*Not Recoverable for Premises let for the Purpose of Gambling.*—Where a landlord has knowledge that premises leased by him are to be used for the purpose of gambling, he can not recover rent.

3. ESTOPPEL—*Effect of—By Judgment.*—The estoppel of a judgment extends only to the question directly involved in the issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon.

4. SAME—*By Judgment—Application of.*—Where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always ·be as to the point or question actually litigated in the original action, not what might have been thus litigated and determined. It is only upon matters actually litigated that the judgment is conclusive in another action.

5. SAME—*By Judgment— Uncertainty Removed by Extrinsic Evidence.*—If several distinct matters may have been litigated, upon one or more of which judgment was rendered, the whole subject-matter of the action will be open to a new contention, unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined.

**Covenant,** for rent. Error to the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the October term, 1895. Reversed and remanded. Opinion filed January 22, 1896.

## STATEMENT OF THE CASE.

The facts presented in this record are these : Defendant in error leased to plaintiffs in error certain premises for a certain time, at a monthly rental. This suit was brought in covenant for the rent for the months of July, August, September, October and November, 1894. Afterward an order of the court was entered, changing the action from covenant to assumpsit, and defendant in error filed a declaration in assumpsit. Defendants joined issue by pleading

the general issue. Afterward defendant in error filed additional counts for use and occupation.

The cause was tried before the court without a jury, and a finding by the court in favor of defendant in error, and judgment.

While this cause was pending in the court below, the rent for the month of December, 1894, became due and payable, according to the terms of this lease. Defendant in error brought suit for the December rent, 1894, and obtained judgment therefor. This judgment, together with the pleadings and files of the case, were offered by defendant in error by way of rebuttal, and were admitted by the court.

The plaintiff in error contends that the premises were leased by the agent of defendant in error to plaintiffs in error, knowing that the plaintiffs in error were to conduct therein a bucket shop, in violation of law. Defendant in error does not contend that the plaintiffs in error did not run a bucket shop in said demised premises during the time for which they were leased, but denies that she made, or caused to be made, the lease in question, for the purpose of enabling them to carry on such a business. Counsel for plaintiffs in error argue that the knowledge of Homer Potwin, the agent of defendant in error, is the knowledge of the principal.

Upon the trial it was agreed by counsel, that if Homer Potwin were present he would testify that at the time of the making of the lease in question he had no written authority from his mother, Mary E. Potwin, to make the same, and also that during the year 1894, and prior to June, he dealt with the defendants on a number of occasions in buying and selling stocks on margins, such deals being in his own name, and that on one occasion, when he lost money to them by such deals, he authorized them to apply such losses of his on the rent due the plaintiff, and they did so, and that since June, 1894, he has dealt with the defendants, buying and selling stocks on margins, such deals being in his own name, and by reason of such deals he is indebted to

them to the sum of $4,000, and that these deals were conducted on the premises rented to defendants.

George N. Porter, a witness called by defendants below, testified: "I acted for the defendants, who are clients of mine, and was authorized by them to negotiate with Homer Potwin for a lease of the premises. Homer Potwin asked me for what business the defendants desired the room, and I told him they wanted the room to run an institution similar to Murphy's, which is called a 'bucket-shop.'

Ralph Archibald, a witness called by defendants below, testified that the business carried on by the defendants below in the premises in June, and thence to December, 1894, was gambling; that he saw Homer Potwin, the plaintiff's agent, in there; saw him buying and selling stock at different times; no stock was ever actually delivered. "The lowest trade you could make there was $2, and from that up to one hundred. If you buy $2 worth, and it goes in your favor, you can cash in your ticket, if you don't want to contract any more, and you get $3.25 for $2. If it falls and goes up again, your margin will stand. You can sell out when you choose."

John J. Connerty was called on behalf of defendants, and it was agreed by plaintiff and defendants that his testimony would be substantially the same as that of the witness Ralph Archibald.

Homer Potwin, called by defendants: "Mary E. Potwin is my mother. Henry Potwin is my brother. The receipt at which I am now looking is in the handwriting of Henry Potwin. He collected rents a portion of the time and had authority to do so." A receipt for $833.34 for rent of the premises in question for the month of July, 1894, was introduced in evidence.

James A. Webb, called in his own behalf, testified: "I am one of the defendants and am acquainted with Mary E. Potwin, the plaintiff. I have talked with her concerning the premises and the authority of Homer Potwin. It was in March or April, 1895. I went to see her in regard to the expiration of the lease and also a settlement of the difficul-

ties between us. I told her that her son had been playing in there and lost money, forty odd hundred dollars. She said she did not know it was so much; that her son had charge of everything; that she did not want him to play in there. When he rented the place, she thought it was a bad idea for him to play in there. He had full charge, and anything he did in the matter was all right. I told her he had lost money, and told her the receipts—when we paid the rent, that what he owed had been taken out. She said he had a right—that he had full charge of everything and that she did not dispute his right to do what he pleased with it, except that at present she needed money. About the $4,000, she said she had no idea that he lost so much. I explained that he had won a great deal more than it. When he won he got cash for it; when he lost, he would say : ' Charge it up.' She then says, ' Whatever he does is all right—in full charge.'

"I told her I thought her son had been badly advised. That is the way I commenced the conversation. She wanted to know what the business was like. She wanted to know whether the business was like the board of trade. She said she had read Judge Tuley's decision, where it said it was gambling. She was surprised when I spoke to her about how much Homer had lost there. I explained the manner in which we did business there. She did not impress me with the idea that it was the first she knew about it. She knew as much about the business as an outside person would know. I have known Homer Potwin about ten years."

Defendants rest.

Homer Potwin, being re-called by plaintiff below, testified: " I acted for the plaintiff in negotiating the lease of the premises. He (Porter) came and told me he had some good parties who wanted to rent the room in question. I asked what the business was to be, and he said, in stock—a commission house in stocks, bonds and grain and provisions— that is, a board of trade business and a New York stock business, and 1 told him it would be all right, if the parties were good. I personally saw the defendants afterward; they came

to our office at No. 126 Washington street, in the same building where the premises in question are. They said they wanted the place as an exchange. During the talk neither Porter nor either of the defendants stated that they wanted the premises for gambling purposes, but said they wanted it as an exchange—for the commission business in stocks, grain and provisions. I had just a bowing acquaintance with the defendants before that time. The money was never paid for the receipt given by my brother. I told the plaintiff that the lease had been given and told her the nature of the tenancy, and that the defendants were conducting a commission business in stocks. I owed the defendants a considerable sum of money on plays I had been makinng with them in their stocks, and left this receipt with them to apply on my indebtedness to them. (Meaning receipt for July rent.)

"I first began gambling in stocks in the place in question, No. 126 Washington street, about two or three months after the defendants took possession. I was in the building almost every day except Sunday. The premises occupied by the defendants were on the first floor in the large room. I was in there almost every day. After I began gambling in stocks I made deals or plays with the defendants right along at different times, off and on. I frequently had charged against the rent losses of mine made in deals for stock and the like, with the defendants. I had no stock to sell any more than other people had. I simply bid on the rise and fall of the market. I saw other people there doing the same thing right along. This is the business the defendants began doing shortly after they took possession, and continued it until they got out. Mrs. Potwin did not know at the time the lease was made out just the business these men were going to engage in. I took no steps, at any time, to get the defendants out of possession until last fall, when I tried to get possession because of non-payment of rent. All I wanted was the money."

The court found the issues for the plaintiff below, and assessed her damages at $4,236.

EDWARD H. MORRIS, attorney for plaintiffs in error.

C. A. SURINE, attorney for defendant in error.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE
COURT.

It is undisputed that Homer Potwin, the landlord's agent,
in renting the premises and collecting the rent therefor, knew
when so collecting the rent that the house was being used
by the tenants for gambling purposes. We are of the opin-
ion that when, as his mother's agent, he leased the rooms,
he knew that they were to be used for the purpose of gam-
bling.

His knowledge in this respect, that is, the knowledge
which, as her agent to let these premises and collect the rent
therefor, he derived in the course of so acting, is to be im-
puted to her. Mecham on Agency, Sec. 718.

The testimony of Webb, as to his conversation with her,
shows that she then knew that he was using the premises
for gambling purposes. She fails to appear as a witness and
deny her knowledge of the illegal use for which her prem-
ises were let and used; the testimony of Webb should, there-
fore, in this action, be conclusive against her as to her
knowledge that the defendants below were then using her
house for the purpose of gambling.

Such continued use, coupled with her connivance thereat
and aid thereof, in suffering her son and agent to set off his
losses in gambling at such place, against the rent due her,
is a defense to this action for rent. Wood's Landlord and
Tenant, Sec. 551; 21 Com. Law, 744; Jennings v. Throg-
morton, Ry. & M. 251.

After the commencement of this action, the rent for the
month of December, 1894, became due. Suit was brought
by the defendant in error, and a judgment therefor recov-
ered by her. The files and records in that case were intro-
duced in evidence on the trial of· the present case, as an es-
toppel against the defendant below—preventing them, it is
said, from urging the defense of illegality in the renting or
use of the said premises.

" The estoppel of a judgment extends only to the question directly involved in the issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon." Lewis' Appeal, 67 Pa. St. 153; 21 Am. & Eng. Ency. of Law, 192.

" In all cases, therefore, where it is sought to apply the estoppel of a judgment, rendered upon one cause of action, to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon matters actually litigated is the judgment conclusive in another action." Cromwell v. Sac Co., 94 U. S. 351.

The only question, so far as the record shows, actually litigated by the suit in which the judgment was obtained, was whether the rent for December, 1894, was due and unpaid.

A decision as to what the premises were used for during months other than December, 1894, was not necessarily involved in the suit brought for the rent of that month only.

The estoppel of a judgment is limited to matters necessarily involved in the litigation in which the judgment is rendered. Atty. Gen. v. C. E. R. R. Co., 112 Ill. 539.

The burden of proof was upon the defendant in error, she setting up the judgment, to show what was determined by it, and failing to do this, the court can only look to the bare judgment to see what was of necessity determined in that suit. 21 Am. & Eng. Ency. of Law, 202.

" If there be any uncertainty in a record, if several distinct matters may have been litigated, upon one or more of which judgment was rendered, the whole subject-matter of the action will be at large and open to a new contention, unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined." Russell v. Place, 94 U. S. 606; Davis v. Brown, 94 U. S. 423.

The judgment of the Circuit Court is reversed and the cause remanded.