## MITCHELL *v.* CAMPBELL.

### [72 South. 231.]

1. LANDLORD AND TENANT. *Leases. Legality of object. Disorderly house. Principal and agent. Knowledge imputed. Evidence. Admissibility. Parol evidence explaining writing. Bills and notes. Validity. Contracts. Enforcement.*

   If a landlord knowingly leases his property to be used for the purpose of prostitution, he cannot recover for rents which a tenant has agreed to pay. The whole contract is against public policy; an offense against morality and absolutely void.

2. PRINCIPAL AND AGENT. *Knowledge imputed.*

   Knowledge of an agent who rents a house to be used for immoral purposes is imputed to his principal.

3. SAME.

   If such lease contract be in writing, parol evidence is admissible to expose its immoral and unlawful character.

4. SAME.

   Such a contract being void *ab initio*, rent notes based thereon are void and the endorsee thereof acquires nothing.

5. CONTRACTS. *Illegality. Enforcement.*

   Courts will not enforce a contract based on immoral or illegal objects, since no court of justice can be made the handmaid of iniquity.

APPEAL from the circuit court of Hinds county.

HON W. H. POTTER, Judge.

Suit by C. Mitchell against Blanche Campbell. From a judgment, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders,* for appellant.

*Hamilton & Hamilton,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellant sued appellee in a justice of the peace court upon two promissory notes. Upon the trial of the case in the circuit court, a peremptory instruction was given by the trial judge in favor of appellee as the defendant, and from the judgment entered in pursuance of this instruction appellant appeals.

It appears that one E. R. Price, of Macon, Ga., owned a house and lot on Oakley street in Jackson, Miss., and in September, 1913, the premises were by contract in writing leased to the appellee for a period of two years at a monthly rental of seventy-five dollars payable in advance. E. R. Price, the landlord, was represented in the negotiations by his son and attorney in fact, George C. Price. Notes were given to evidence the monthly payments. The notes due February and March, 1914, were, before maturity, transferred and assigned to appellant. Default being made in the payment of these two notes, the present action was instituted upon them. The defendant in the court below interposed the defense that the lease contract and the notes were illegal and void for the reason that the premises in question were rented for illegal purposes, and the proof justifies the conclusion reached by the trial court that the house was rented for purposes of prostitution, as a bawdyhouse, and also as a place for the illicit sale of beer. In fact, counsel for appellant upon trial of the case frankly admitted that:

"Oakley street is notorious as a part of the restricted district, and that house in there, this house, and the ones adjacent have been for many years used as houses of prostitution, and that this is notorious."

The evidence of Blanche Campbell, the appellee, is to the effect that, some time prior to the execution of the lease in question, George C. Price, the agent of the landlord, furnished the house and rented it furnished to one Flora Campbell, and for a time allowed George C. Price to room there; that at the time the present lease was

executed appellee was not living on Oakley street, but that she had at a former time conducted and plied her unlawful trade on this street and that this was well known to George C. Price; that she did not care to rent this house on Oakley street, because she said she lost money when she was there before, but that Price held out certain inducements to her, assuring her that there had been a change in the police force and that she would likely do a good business on Oakley street; that Price rented her part of the furniture which he had before that time rented to Flora Campbell when she was in the house; and that he also employed the services of a negro to build a "trap" in the house under which she might conceal beer from the officers of the law. Some of the statements of the witness were denied by George C. Price; but this witness, himself several times convicted upon a charge of selling intoxicating liquor, virtually admits that he knew the purpose of the tenant and the use to which she expected to put the property and the assistance which he rendered in providing the "trap" to conceal the beer. In other words, the proof justifies the conclusion that the agent not only had knowledge of the fact that Blanche Campbell was a common prostitute, but that she intended to use the very premises here leased as a bawdyhouse and a "blind tiger."

The question is, therefore: Can the payment of the rent notes in the hands of an assignee be enforced? The authorities are in accord that, if a landlord knowingly leases his property to be used for the purposes of prostitution, he cannot recover for rents which a tenant has agreed to pay. The whole contract is against public policy, an offense against morality, and absolutely void. *Ernst* v. *Crosby,* 140 N. Y. 364, 35 N. E. 603; *Fields* v. *Brown,* 188 Ill. 111, 58 N. E. 977; 9 Amer. & Eng. Encl. Law (2d Ed.), 527; *Hunstock* v. *Palmer,* 4 Tex. Civ. App. 459, 23 S. W. 294; *Burton* v. *Dupree,* 19 Tex. Civ. App. 275, 46 S. W. 272; *Berni* v. *Boyer et al.,* 90 Minn. 469, 97 N. W. 121; *Plath* v. *Kline,* 18 App. Div. 240, 45

N. Y. Supp. 951; *Demartini* v. *Anderson,* 127 Cal. 33, 59 Pac. 207; note, 19 L. R. A. (N. S.) 662; note, 8 Ann. Cas. 181.   Our court in *State* v. *Treweilder,* 103 Miss. 859, 60 So. 1015, held that under the common law it is a misdemeanor for a landlord knowingly to rent his house with the intention that it should be used for the purposes of prostitution when the house is in fact so used.

It is argued by counsel, however, that the knowledge of the unlawful or intended use in this case is the knowledge of the agent, and not of the landlord himself.   The record discloses, however, that the son in this case was evidently the general agent of the lessor in making and executing the unlawful contract, and under such circumstances we are forced to conclude that the knowledge had and possessed by the agent must be imputed to his principal.   Otherwise a nonresident landlord might equip and lease the whole restricted district of the city and receive and enjoy the proceeds from the nefarious traffic, deliberately closing his eyes to any information as to the occupancy or use of any of the premises.   He would thus be able to do by proxy what he could never do in person. If George C. Price had no authority to make the contract here in question, then there is no lawful contract at all.   The proposition that knowledge by the agent of the unlawful purposes is binding upon the landlord is amply supported by the authorities.   *Ryan et al.* v. *Potwin, Trustee,* 62 Ill. App. 134; *Stillman* v. *Loveless,* 152 Ill. App. 332; *Ashbrook v. Dale,* 27 Mo. App. 649; *Fields* v. *Brown, supra.*   If the contract is in writing, parol evidence is admissible to expose its immoral and unlawful character.   *Dougherty* v. *Seymour,* 16 Colo. 289, 26 Pac. 823; *Sherman* v. *Wilder,* 106 Mass. 537; *Sprague* v. *Rooney,* 104 Mo. 349, 16 S. W. 505.

If the lease contract in the present case is void *ab initio,* the rent notes based thereon are void, and appellant as indorsee and holder of these notes acquired nothing.   In fact, no point is made that appellant as assignee has any greater rights than his assignor would have.

. The decisions have abundantly announced that courts will not lend their aid in enforcing illegal contracts. The door of the court is and must always be open to litigants having substantial rights to be enforced or wrongs to be redressed, and in searching for truth and justice much perjury, filth, and crime are often necessarily exposed. The law, however, is always on the side of morality. Courts are founded to execute the laws, and not to sanction or assist in their violation. As well said by JOHNSON, J., in *Bank* v. *Owens,* 2 Pet. 538, 7 L. Ed. 508, ''No court of justice can in its nature be made the handmaid of iniquity.''

*Affirmed.*