## C. M. & E. G. HAM *v.* WILSON.

[86 South. 298.  No. 21248.]

SALES. *Not enforcable, where consideration is illegal or immoral.*
Courts will not enforce a contract based on immoral or illegal objects, since no court of justice can be made the handmaid of iniquity.

APPEAL from circuit court of Washington county.

HON. H. H. ELMORE, Judge.

Action in replevin by C. M. & E. G. Ham against Bessie Wilson. Judgment for defendant, and plaintiffs appeal. Affirmed.

*Watson & Jayne,* for appellants.

As recited in the statement of facts, the action in this case was one of replevin upon which trial was had in the lower court and a jury and verdict returned for the defendant and a judgment rendered thereon. At the trial, the appellants made their case in substance as follows: That the furniture in question was sold to appellee under written contracts of conditional sale, with reservation of title in appellants; that default had been made in the installment payments and goods thereafter detained by appellee, and the goods were seized under writ of replevin; that the goods thus seized were the goods sold under the installment contracts. A statement of the condition of the account between appellants and appellee under these sales was made, showing a balance owing by appellee to appellants of five hundred forty dollars and fifteen cents, with overdue installments and the value of each item of the goods sold was proven.

Thus, a case for appellant was made and could be overcome only by defendant showing a good defense. This she attempted to do through the two defenses set up as recited

in the statement of fact: (A) That the goods in question were sold by appellants to appellee for the purpose of equipping and operating a house of ill-fame, and where to be paid for out of whatever such house should yield. (B) The partial defense that the goods covered by the conditional sales contracts of May 12, 1916, July 17, 1916, and October 30, 1917, had been paid for by application of payment.

We submit that the evidence fails to show that appellant knew of and for what purpose the goods were being purchased by appellee. The guilty use of the property in question, as well as guilty knowledge of the contemplated guilty use thereof being an affirmative defense, the burden of proof thereof was upon the appellee, who set up the same. 9 Cyc., p. 762, section 13.

"Every presumption of law is in favor of the legality of a contract, and it is incumbent on the party alleging its illegality to show everything necessary to render it so, though the proof be of an indicative character." *Merrill* v. *Melchoir,* 30 Miss. 516.

Many of the cases hold that knowledge of contemplated guilty use is not sufficient to invalidate a sale of goods, but that the vendee shall in some way aid or participate in that design, or that the contract of sale be so connected with the illegal or immoral purpose or transaction of the vendee as to be inseparable from it.

Our court held, in *Walker* v. *Jeffries et al.,* 45 Miss 160, that mere knowledge of the lender of the illegal purpose for which the money is wanted does not vitiate the loan.

We respectfully submit that the case ought to be reversed and remanded.

*Boddie & Farish,* for appellee.

The proof in this case shows conclusively that the appellee was engaged in an unlawful and immoral business; that she purchased the articles replevied for the purpose of conducting that business, and that said business could not

have been conducted without those or similar articles, and it showed to the satisfaction of the jury that the appellants knew the purpose for which the appellee bought the articles, and the use to which she intended to put them, and that they would be paid for out of the profits of the unlawful business, and the court will not disturb the verdict of the jury on this issue.

C. M. Ham, the senior member of the firm, actually owned and rented a house adjoining the house occupied by the appellee to a woman of the underworld, to-wit, May Carter, and E. G. Ham, the other member, was the mayor of the city of Greenville, and the jury believed from the evidence that they knew all about the neighborhood and the character of the residence thereof. Deputy sheriffs Vaught and Shannahan, testified that that neighborhood was notoriously known as the seggregated district.

E. B. Pool, the bookkeeper and general agent for the appellant, testified that he knew the character of the woman, the purpose for which she intended to use the articles, and the character of the neighborhood she meant to take them to, and how she expected to pay for them, and that knowledge is chargable to the appellants.

The uses which she intended to put the property to were unlawful and against the public policy of the state, and she was aided and abetted in the unlawful business by the appellants and therefore the courts in this state will not assist them in the enforcement of their contract. 30 Miss. 357; 40 Miss. 557; 78 Miss. 515; 35 Cyc., page 89, 9 Cyc., 569 and 571; A. & E. Annotated cases, 1914 b. and notes on page 800; 51 L. R. A. 889; 10 L. R. A. 439, 6 R. C. L., page 695, et seq.

We ask the court's attention also to the case of *Reed* v. *Brewer,* reported in 36 S. W. report at page 99. That was a case very similar to the case at bar. The plaintiff, with full knowledge of the facts, sold furniture for use in a house similar to the one conducted by the appellee in this case under a contract providing for monthly payments, and that the purchaser should use the furniture in her house,

title to remain in the vendor until the price was paid.  The court held that the contract and notes given in accordance therewith were void, being based upon an illegal contract.

The jury had all the witnesses before it, heard and saw both of the appellants testify, and found as a fact that the appellants sold the appellee the furniture knowing what she was, knowing what her business was, and the use she was to put the furniture to, and the revenues from what business she was to meet her payments with.  In other words, the jurors did not believe the appellants statements; but there was ample proof to sustain the verdict aside from the Messrs. Ham's testimony, namely; the testimony of E. B. Pool shows clearly that he knew all about the woman, what her business was, and how she expected to pay for the furniture and E. B. Pool was the salesman, bookkeeper and general agent of the appellants.

We respectfully submit that the judgment of the lower court should be affirmed.

Sam Cook, P. J., delivered the opinion of the court.

The appallants instituted a suit in the circuit court of Washington county.  The suit was in replevin, and it appears that the appellants were merchants doing a business in the city of Greenville, in the county of Washington.  It appears from the record that appellants sold to the defendant, appellee, a bill of household goods, amounting in aggregate to the sum of one thousand seven hundred and ninety dollars and ninety cents; but it seems the defendant had reduced the original bill by making payments to the sum of five hundred and forty dollars and fifteen cents. The evidence shows that the defendant was a prostitute, and was conducting a house of ill fame in the segregated or red light district.

We think the record shows beyond question that the sellers knew, at the time of the sale of the goods, that the items sold by them were bought for the purpose of furnishing a house of ill fame, and the jury were fully justified in

so finding. One of the members of the firm selling the furniture was the mayor of the city of Greenville, and after a large part of the purchase price had been paid the mayor issued an order compelling the defendant and all others of her kind to close up their houses and leave town. It appears from the contract of sale that the appellee could not remove her furniture without the consent of the sellers and, appellee being unable to pay the balance due, this action was instituted by the appellants. It seems quite clear that the jury believed that the seller knew for what purpose the furniture was bought, and to what use it was put, and the evidence warranted, if not compelled, such belief.

"The whole contract is against public policy, an offense against morality, and absolutely void." *Mitchell* v. *Campbell,* 111 Miss. 806, 72 So. 231.

Judge STEVENS speaking for this court in the case just quoted, went fully into the principles involved in that and in this case, and committed us to the doctrine that the court will not lend its aid to such immoral and unholy transactions. See, also, *Standard Furniture Co.* v. *Van Alstine,* 22 Wash. 670, 62 Pac. 145, 51 L. R. A. 889, 79 Am. St. Rep. 960.

*Affirmed.*