## Menger v. Thompson.

[91 South. 40, No. 22219.]

Sales. *Sales of furniture on credit to keeper of house of ill fame held contrary to public policy.*

Where a merchant sells furniture on credit to a keeper of a house of ill fame for use in such business, with knowledge of the character of the buyer and the use it is to be put to, where the evidence shows that there were no other means with which to pay for the same than the proceeds of the illegal business of the buyer, such contract is contrary to public policy, and the creditor cannot maintain an action to recover the property or for the value thereof.

Appeal from circuit court of Warren county.

Hon. E. L. Brien, Judge.

Action by W. O. Menger against Marie Thompson. Judgment for the defendant, and the plaintiff appeals. Affirmed.

*Bryson & Katzenmeyer*, for appellant.

We submit that the bare facts that goods are sold to a prostitute, and that she uses the goods in a house of prostitution does not bar the seller from collecting the purchase price of the goods or any part thereof from the purchaser even tho she be a prostitute. Something more must be shown in order to bar an action by the seller. The seller must in some way be connected with the immorality either as a participant therein or as an aider and abetter therein. This far all the authorities seem to agree and we shall not for that reason offer authority to support the argument.

Some of the court, however, have gone so far as to hold that very slight participation bars an action, that even the mere bare facts of knowledge by the seller that the purchaser contemplates using the goods for immoral purposes is sufficient to put the seller on notice and that a sale made after such knowledge, will not be enforced, but the

great weight of authority is contrary to this view and holds that the seller must actively participate in the immorality, or willfully aid in and abet the same.

The supreme court of Mississippi has repeatedly adopted the second line of authorities and held with the weight of authority on this point as we shall show, tho some recent decisions fail to make the distinction quite clear. The case at bar discloses no participation in the immorality, nor active aid or abetment therein. The testimony is not clear that appellant even knew of the immoral character of appellee, nor that she intended using the goods in a house of prostitution until some time after the first purchases had been made, and it is clear that he never at any time participated in the immorality or actively aided or abetted it, tho it is reasonably clear that the appellant, before the last purchases were made, did know that appellee was a prostitute, and was conducting a house of prostitution.

If appellant is defeated in this action it must be on the bare knowledge that the goods were being put to an immoral use by the appellee.

The court below construed the law to be that bare knowledge by a seller that the purchaser desired to put the goods to an immoral use, and that the purchaser did so use them was sufficient to bar an action for the purchase price. Did the court below err in this? That he did we shall now argue under a separate heading.

We submit that bare knowledge on the part of the seller of goods that the purchaser is a prostitute and intends to use the goods sold her in a house of prostitution is not sufficient to bar an action for the purchase price. 13 C. J. 517, par. 476. As supporting the English rule, cases are cited from Alabama, Iowa, Maine, Massachusetts, Vermont and Virginia, only six in number. As supporting the United States Rule, cases are cited from the federal courts and the following states: Arkansas, Colorado, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada,

New Hampshire, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, and Washington, twenty-four states and all the federal courts.

This leaves eighteen states which had not passed on the point at the time 13 C. J. was written, viz: Arizona, California, Connecticut, Delaware, Florida, Idaho, Illinois, Montana, New Jersey, New Mexico, Ohio, Oklahoma, South Dakota, Utah, West Virginia, Wisconsin, and Wyoming.

In 15 Ency of Law (2 Ed.), 986, it is said: "To render a contract, innocent in itself, illegal on the ground that it was entered into to further an illegal purpose, it is held that such intent must have been mutual. Where the party who is ignorant of the illegal purposes of the other party discovers such purpose before the contract has been executed, it has been held that he may rescind the contract without liability in damages as for a breach.

The rule laid down by the weight of authority, especially in the United States, is that though the contract is entered into by one of the parties for the furtherance of an illegal purpose, it is held that such intent must have been mutual. Where the party who is ignorant of the illegal purpose of the other party discovers such purpose before the contract has been executed it has been held that he may rescind the contract without liability in damages as for a breach.

The rule laid down by the weight of authority, especially in the United States, is that though the contract is entered into by one of the parties for the furtherance of an illegal purpose, the contract will not be rendered illegal as to the other party, though he had knowledge of such illegal purpose, provided he does nothing in furtherance thereof. 6 R. C. L. 695, par. 102, 9 Cyc. 571; the decisions by the supreme court of Mississippi are in line with the foregoing texts: *Walker* v. *Jeffries et al.,* 45 Miss. 160; *Armstrong* v. *Toley,* 11 Wheat. 258; *Kreiss* v. *Seligman,* 9 Barb. 439; *Martin* v. *Brooks,* 2 Wall. 70; *Gilliam* v. *Brown,* 43 Miss. 641; *Contithan* v. *Insurance Company,* 91 Miss.

383; *Aetna Insurance Company* v. *Heidelberg,* 112 Miss. 46; *Armstrong* v. *Toler,* 11 Wheat. 258, 6 L. Ed. 468.

Another Mississippi case along the same line is that of *Luderbach Plumbing Company* v. *Nellie Stein,* 113 Miss. 475; *Insurance Co.* v. *Heidelberg,* 72 So. 852; *Armstrong* v. *Toler,* 11 Wheat. 258, 6 L. Ed. 468; *Hanover National Bank* v. *First National Bank,* 109 Fed. 421, 48 C. C. A. 482; *Armstrong* v. *Toler,* 11 Wheat. 258, 6 L. Ed. 468; *Ingram* v. *National Salt Co.,* 130 Fed. 676, 65 C. C. A. 54; *Jenson* v. *Toltec Ranch Co.,.* 174 Fed. 86, 98 C. C. A. 60; *Mechanics Insurance Company* v. *Hoover Distilling Company,* 102 Fed. 590, 105 C. C. A. 128; *Jenson* v. *Toltec Ranch Co.,* 174 Fed. 86, 98 C. C. A. 60; *Armstrong* v. *Toler,* 11 Wheat. 258, 6 L. Ed. 468; *Armstrong* v. *American Exchange Bank,* 133 U. S. 433, 33 L. Ed. 747; *Hanover Natl. Bank* v. *First Nat'l Bank,* 109 Fed. 421, 48 C. C. A. 482.

The case at bar taken most strongly against appellant shows he knew the appellee was conducting a house of prostitution and that the goods sold and delivered to her were for use in such house, but this does not preclude recovery unless it further appears (which it does not) that appellant's purpose in making the sales or his inducement to make them was to foster and encourage prostitution.

There is not a scintilla of testimony, however, to support the view that appellant had any desire to aid, foster or encourage the immoral business. He had a furniture store, he was anxious to sell furniture and he said never considered a customer's morality or immorality, or where the goods were to be delivered in making sales whether in a moral or immoral neighborhood. In this who can say but that he told the truth? Having been in the furniture business in Vicksburg, since 1879, his day for excitement over possible and attractive prospects had passed into the "sear and yellow leaf" and matured into business for revenue only.

Let me now call attention to two other cases by this court on the point in question. *Mitchell* v. *Campbell,* 111

Miss. 806 and 72 So. 231; *Ham* v. *Wilson,* 86 So. 298, 123 Miss. 510.

In *Ham* v. *Wilson* (86 So. 298), Judge COOK stated the facts as follows: "We think the record shows beyond question that the sellers knew, at the time of the sale of the goods, that the items sold by them were bought for the purpose of furnishing a house of ill-fame, and the jury were fully justified in so finding.  One of the members of the firm selling the furniture was the mayor of the city of Greenville, and after a large part of the purchase price had been paid, the mayor issued an order compelling the defendant and all others of her kind to close up their houses and leave town.  It appears from the contract of sale that the appellee could not recover her furniture without the consent of the sellers, and, appellee being unable to pay the balance due, this action was instituted by the appellants."

The opinion is silent on active assistance or connivance or participation by the seller in the immorality of the purchaser, all that is stated is that the seller knew at the time of the sale of the goods that the items sold by them were bought for the purpose of furnishing a house of ill-fame.  This in itself was not sufficient to bar the demand according to all the authorities above referred to.  In the case at bar the court took the bull by the horns, if we may be permitted so to speak, and decided the case himself as if, and evidently on the theory, that knowledge merely that the goods in question were delivered to and used in a house of prostitution was sufficient to bar the action.

The court below decided the case on the authority of *Ham* v. *Wilson,* above cited, construing that case to hold that bare knowledge of the immoral destination and use of the goods was sufficient to bar the plaintiff's right of action.  If he erred in the force and effect of that case, his decision must be reversed, and if the facts of that case showed more than bare knowledge on the part of the seller then the case ceased to be a precedent for the case at bar, and if it appear, and we submit that it does, that the case

at bar is not in line with the preceding decisions of the court, then it must be reversed.

*Anderson, Vollor & Kelly,* for appellee.

The facts in this case are fairly stated in the brief of council for appellant. The appellant in the trial court undertook as best he could to deny that he had any knowledge that Marie Thompson, the appellee, at the time she purchased the furniture and household goods involved in this litigation, was a woman of the underworld and that she was conducting houses of ill-fame, and that the goods, furniture, etc., was to be used in her unlawful and immoral business, but the further he went into his testimony, it was clearly shown that his knowledge was too firmly fixed to admit him to escape and on appeal to this court, his counsel abandons the position at first taken by his client and argues here that even though appellant knew that the appellee, was buying the goods for use in her houses of ill-fame, that such knowledge will not bar him from a recovery of the goods upon her default in making payments on the weekly installment plan that is the usual way of collecting unpaid balances by furniture dealers in the conduct of their business, unless he actually did something to encourage or aid the unlawful and immoral enterprise.

This contention is not in accord with the very latest opinion rendered by this court in the case of *Ham* v. *Wilson,* 86 So. 298. In that case the court cited as authority: *Standard Furn. Co.* v. *Van Alstine,* 22 Wash. 670, 62 Pac. 145, 51 L. R. A. 889, 79 Ann. St. Rep. 960.

In this case the facts are identical with the facts in the case at bar, and the Washington court would not permit a recovery because the furniture dealer sold his goods to prostitutes and had knowledge that the goods were to be used in the conduct of a house of ill-fame.

The appellant could not resist the temptation to seize the property that had so materially enhanced in value due to the abnormal war conditions. Appellant forced the

issue that is presented here, and he now deserves the penalty for his greed.

We respectfully submit that this case, because of the many strings strung about the property and held tautly by the appellant, ought in justice and of right to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Appellant was the plaintiff, and appellee was the defendant in the court below. The plaintiff sued out a writ of seizure in the circuit court to recover possession of certain furniture sold to the appellee and for a judgment for the balance of the purchase price, etc. The plaintiff was a furniture merchant, and the defendant was conducting a house of prostitution in the restricted or "red light" district, and had bought large bills of furniture from the plaintiff, also furnishings of all kinds for the equipment of her building. She made these purchases under the installment plan or lease system, paying a small amount down at the time of purchase and making small weekly payment thereafter. The delay extended over a period of years, and the amount of credit extended to appellee amounted at one time to more than three thousand, two hundred dollars, the total sales amounting to more than four thousand dollars, and the balance due demanded being two thousand and fifty-eight dollars and forty-five cents. The defendant pleaded the general issue, and also that the plaintiff was not entitled to recover because of the illegality of the sale and the purpose for which the furniture was bought and used.

The testimony shows that the plaintiff had lived in the city of Vicksburg since 1879, and that the place where defendant resided and the house numbers at which the furniture, etc., was delivered was in the "red light" or restricted district, and that no persons lived in said district other than the inmates of houses of prostitution; that defendant had resided in the district for many years and

had for a number of years conducted a house of ill-fame of her own account; that on one occasion the plaintiff went to defendant's house to take the measurements of the different rooms for the floors, windows, and other things requiring measurements for the house furnishings, etc. It is shown that on several occasions the district was closed by the police authorities of the city of Vicksburg, and on such occasions the appellant was requested for permission by the appellee to store the furniture during the period the district was closed, and he gave permission to have the furniture stored, and, during these periods, no payments were made on the furniture so purchased. There is no showing that the appellee had any property or financial rating justifying the extension of credit in such large amounts, and the testimony of the appellant, we think, fully shows that he knew the character of the business in which defendant, appellee, was engaged, and knew that the furniture was purchased in aid of such business, and that the only reasonable expectation that he could have of being paid for the furniture so sold or leased to the appellee, was out of the proceeds of prostitution. There was a peremptory instruction for the defendant based upon this theory, that the plaintiff knew the character of appellee and that his expectancy of being paid for the furniture, etc., was based on the earnings of such business.

We think this case is governed by the rules stated in *Mitchell* v. *Campbell,* 111 Miss. 806, 72 So. 231, and *Ham* v. *Wilson,* 123 Miss. 510, 86 So. 298. In this last case the facts were not fully stated in the opinion of the court, but the court proceeded upon the principles announced in *Mitchell* v. *Campbell, supra.* The evidence showed in that case, as it shows in this, that the defendants were engaged in the business of prostitution, and that the plaintiffs knew that fact and furnished the defendant credit in large sums, when there was no evidence of any financial ability on the part of the defendant, or any means of paying for the furniture so purchased otherwise than by and through the business of prostitution, in which the defendant was engaged.

In view of these principles and the facts in the record before us, we think the judgment of the court must be affirmed.

*Affirmed.*