AMERICAN EQUITABLE ASSUR. CO. *v.* McWHIRTER.

(Division A.   April 13, 1931.)

[133 So. 664.   No. 29328.]

R. L. McLaurin and Chaney & Culkin, all of Vicksburg, for appellant.

Thames & Thames and **Brunini & Hirsch**, all of Vicksburg, for appellee.

218

**Cook, J.**, delivered the opinion of the court.

The appellee, Pauline McWhirter, instituted this suit in the circuit court of Warren county against the appellant, American Equitable Assurance Company, to recover on a fire insurance policy issued to her by the appellant, in the sum of one thousand five hundred dollars. The policy of insurance, which was made an exhibit to the declaration, recites on its face that, in consideration of the stipulations therein and a premium of fourteen dollars and five cents, the appellant company insured the appellee against all direct loss or damage by fire, to an amount not excceeding one thousand five hundred dollars, to household furniture and other specified household goods, while contained in a one-story composition roof dwelling occupied as such by the tenant, and located at 711 n/s First East street, in Vicksburg, Mississippi.

To the declaration the appellant filed a plea of the general issue and four special pleas of similar import; the third special plea being as follows:

Now comes the defendant, by its attorneys, and for special plea herein says that the plaintiff ought not to be permitted to recover herein, because it says that the contract of insurance sued on was, without the knowledge of the insurer, procured directly in aid of illegal and immoral business; that it enabled the assured to obtain credit and to purchase the household goods, the subject of the insurance, on credit. This she did, and this she could not have done save for the indemnity against loss or damage by fire, provided by the policy of insurance herein involved; that the said household goods were essential to enable her to attractively con-

duct a house of prostitution, and this she was doing, with the use of said household goods, at the time the policy sued on was issued, and that said policy was therefore void from its inception, and this the defendant is ready to verify.

The appellee filed a special demurrer to each of these special pleas, and these demurrers were sustained. The appellant thereupon withdrew its plea of the general issue, and declined to plead further, and judgment final was entered in favor of the appellee for the full amount of the policy; and, from the judgment so entered, this appeal was prosecuted.

In support of its contention that the court below erred in sustaining the demurrers to its special pleas, the appellant relies principally upon the well-established principle that the courts will not lend their aid in enforcing illegal contracts, or contracts based on immoral or illegal objects, and the cases of Conithan v. Royal Ins. Co., 91 Miss. 386, 45 So. 361, 362, 18 L. R. A. (N. S.) 214, 124 Am. St. Rep. 701, 15 Ann. Cas. 539 and Menger v. Thompson, 128 Miss. 455, 91 So. 40, in which latter case it was held that, where a merchant sells furniture to a keeper of a house of ill fame for use in such business, with knowledge of the fact that the furniture was purchased in aid of such business, and that the purchaser had no property or financial rating justifying the extension of credit in such large amounts, and with further knowledge of the fact that the only reasonable expectation of receiving payment for such furniture was out of the proceeds of prostitution, the contract for the sale of such furniture is void as being against public policy.

In the Conithan Case, supra, the court emphasized the fact that the contract of insurance did not in any way aid, encourage, or promote the unlawful business; and by the several special pleas the appellant has manifestly endeavored to meet these expressions of the court

by charging that the contract of insurance here involved was procured directly in aid of an illegal or immoral business, and that it enabled her to obtain the necessary credit to purchase household goods and successfully conduct a house of prostitution.

The special plea above quoted charges in a general way, and as a conclusion, that the contract of insurance sued on was procured directly in aid of an immoral and illegal business, and enabled her to obtain credit and to purchase the household goods, the subject of the insurance, on credit, and that she could not have done so except for the indemnity against loss or damage by fire. This plea is contradictory on its face, in that it further alleges that she was conducting a house of prostitution with the use of such household goods at the time the policy sued on was issued. The averments of the plea are also contradictory of the written contract of insurance issued by the appellant, which recites, on its face, that it covers household goods and personal effects then in that certain dwelling therein described. This contract of insurance contains no mortgage clause or other indorsement showing that any person other than the insured had any interest whatever in the property insured, and it would hardly be presumed that the appellant would issue a policy on property of which the insured was not the sole and unconditional owner.

In the Conithan case, supra, after discussing the fact that the insurance contract there involved did not aid the illegal business conducted by the insured, the court announced what seems to us to be the correct doctrine, saying: "To defeat the action on the policy it is necessary to hold that the policy itself is an immoral contract, against public policy as tending to promote the business of maintaining a lewd house. The reccord in this does not show that the contract of insurance was an immoral one and against public policy, nor is its tendency necessarily or even remotely the promotion of the business of maintaining a house of prostitution."

This fire insurance contract was based upon an independent cash consideration, and was entered into to secure the owner of the property against loss by fire, and from its very character cannot have an immoral tendency. It was not made to protect the business of keeping a house of prostitution, but to protect the property of the insured, and the fact, if it should be a fact, that the credit of the owner of the property was aided or strenthened by reason of the existence of such insurance, is a consequence too remote to render the contract void as against public policy. The conclusion averred in the pleas that the contract of insurance directly aided and promoted the illegal and immoral business is not supported by any averment of fact supporting such a charge, except the general averment that it enabled the insured to obtain credit and purchase household goods, and this is a consequence so negligible in character, and so remote in its effect, that the contract cannot be said to be in contravention of the public interest, and therefore void. The contract of insurance was not payable to the seller of the furniture, and it contained no mortgage clause in favor of any person, and upon the face of the record no person other than the insured has any interest in the proceeds of the policy; and the insurance of property that may or may not be devoted to an illegal purpose is not in itself an immoral contract. The case at bar is clearly distinguishable from the principles announced in the case of Menger v. Thompson, supra. In that case the seller of personal property, which had been sold for the purpose of being used in an illegal and immoral business, was seeking to recover it, and recovery was denied on the express ground that the seller knew at the time of the sale that the property was to be paid for, if at all, out of the earnings of the said illegal business, and that he thereby participated directly in the unlawful business.

We think the court below committed no error in sustaining the demurrers to the several special pleas, and therefore the judgment entered will be affirmed.

Affirmed.