EMILY McKINNEY, ADMINISTRATRIX, v. W. T. ANDREWS.

1. ILLEGAL CONTRACT.—Mere knowledge that property will be used in an illegal occupation will not avoid a contract for the hire or sale of such property.
2. LIABILITY FOR PROPERTY CONVERTED.—A recovery can be had for the value of a wagon and team hired for the purpose of aiding in the Rio Grande cotton trade in 1863, and which had been sold by the hirer.
3. Such contract would probably be void as to the value of the hire of such property.

APPEAL from Harrison.   Tried below before the Hon. J. B. Williamson.

*H. McKay,* for appellant.

No brief for appellee came to hands of the reporters.

MOORE, ASSOCIATE JUSTICE.—While a number of the interrogatories propounded to his witnesses by appellee, which were excepted to by appellant upon the ground that they were leading, are not, in our opinion, liable to this objection, because they merely led the witnesses to the subject of inquiry, yet it is quite evident, on looking at the bill of exceptions, appellant's objection to several of them

on this ground was well taken; and, therefore, the ruling of the court in this particular, if no other, would require a reversal of the judgment. But as there is apparent in the record an error in the judgment in favor of the appellee which goes to the foundation of his defense, upon which it is obvious, from an inspection of the record, the verdict and judgment of the District Court was in his favor, it is unnecessary for us to advert to each one of the many interrogatories to which this objection was made, and particularize those as to which it should have been overruled and those as to which it should have been sustained.

Appellant by her suit seeks to recover the value of a wagon and five yoke of steers, which she alleges was hired by appellant from her intestate for the purpose of hauling cotton from the county of Grayson to San Antonio, and which, as she avers, appellee undertook and promised, the wear and tear excepted, to return to her intestate, or, in case of failure to do so, to account for the use and reasonable value of the same.

Appellee answered by, first, general demurrer; second, general denial; third, payment; fourth, that said wagon and team were used with the knowledge and consent of appellant's intestate for the purpose of transferring cotton for the Confederate States from the interior of the State to San Antonio, to be there exchanged for powder, lead, and other munitions of war, to be used in carrying on war against the United States; and, fifth, that said wagon and team were taken out of his possession by military force, by command of a quartermaster of said Confederate States, and sent to Eagle Pass on the Rio Grande.

It is evident from the instructions given the jury the case turned in the court below upon one or the other of the last two of these answers. And although the fact of impressment alleged in the last of them seems sufficiently established by the witnesses for appellee, except for the

objectionable character of some of the interrogatories propounded to them for this purpose, yet as appellee admitted that he had sold the wagon and team, and promised to pay for them, it cannot be supposed that they were lost or destroyed thereby. Unquestionably the mere fact of their temporary impressment by an officer of the Confederate States, if they were afterwards sold by appellee, furnishes no valid defense against a demand by the owner for their reasonable value.

If, therefore, the judgment can be sustained, it must be on the ground set up in appellee's fourth answer, to which we have referred. The defense sought to be invoked by this answer is based upon the familiar doctrine that contracts in contravention of public policy, or for an illegal purpose are void, and neither party can maintain an action based upon them. We are not called upon in this case to consider the legal effect of contracts and agreements between parties residing within the so-called Confederate States, and in point of fact subject to its authority and control during the late sectional war, which were neither contrary to the policy or law of the Government whose power and authority they were compelled to obey and respect, although it be admitted that such Government came into existence through an illegal effort to overturn and usurp the dominion and authority of the Government to which their allegiance was justly and rightfully due, and by whose policy and laws, if they furnish the test, such contracts should be held illegal and void.

We are not therefore disposed, on the present occasion, to enter upon its discussion or determination. For, if the policy and law of the Government under whose authority the court to which recourse is had for redress exercises its jurisdiction, furnishes the proper test in determining the validity of the contract, instead of that of the time and place of its execution, and to whose superior power and control the parties were constrained to yield obedience, it

by no means follows that the mere knowledge of the illegal purpose for which an'article may be hired or purchased by one person from another is sufficient to avoid the contract, as to one of them who is in no way connected with or interested in the illegal object or purpose to which the thing hired or sold was to be applied, unless such illegal purpose in some way enter into or form part of the contract.

The use to which the party hiring or buying proposes to himself to apply the property after he gets it, although known to the other, surely does not necessarily enter into or form any part of the contract. The mere knowledge of such purpose, which may or may not be carried into effect, seems to be too remotely connected with it to avoid the contract or preclude a recovery upon it.

But if this is not correct, it does not follow that appellant should not have judgment for the value of the wagon and team as prayed for in her petition. The suit is for the recovery of the value of the wagon and oxen, which appellee, as appears from the statement of facts, admitted he had sold, and not for their hire. His contract was for their hire. No authority was given him to sell the property and apply its proceeds to any unlawful purpose. It was for the mere temporary use to which he contemplated applying the wagon and team during the term of hiring which was tainted with illegality. Though this may avoid the contract of hiring, and preclude a recovery for the use of the wagon and team during the term for which they were hired, still, when this contract was at an end by its terms or the act of the parties, it certainly would not authorize the hirer to convert the property to his own use or justify him in withholding it from the owner. The consent of an owner to the temporary use of his property for an illegal purpose certainly does not annul his title to it, and will no more warrant the party to whom it has been intrusted in converting it to his own use or withholding it from the owner, than it would a stranger to the contract.

For the errors in the proceedings had in the progress of the case in the court below the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.