### Robert H. Hunstock v. Ion Palmer.

#### No. 34.

**Contract Against Public Policy Void.** — Appellant sued appellee for rent of a house used for the purpose of prostitution. Appellant knew to what purpose it would be put when the contract was made, and was cognizant of the fact that it was being used for that purpose during the time the rent accrued. The case was tried by the court below without a jury, and a judgment was rendered for appellee, for the reason that the contract of lease was against public policy and void. *Held*, that the judgment was correct.

Appeal from Bexar. Tried below before Hon. G. H. Noonan.

*Perry J. Lewis*, for appellant.—In order to avoid a contract for the lease of a house, on the ground that it was made in contravention of public policy, being occupied as a house of public prostitution, the illegal use must enter into or form a part of the contract; and it is not sufficient that the lessor knew it was the intention of the lessee to use the house for an illegal purpose, and that she did so subsequently use it. Bishop v. Honey, 34 Texas, 245; 34 Texas, 689; 41 Texas, 363; 69 Texas, 503; Greenh. on Pub. Pol., 537; 4 E. D. Smith, 90, 570; 49 Mo., 433; 8 Am. Rep., 136; 24 La. Ann., 591.

No briefs for appellee reached the Reporter.

FLY, Associate Justice.—This suit is founded upon an account for rent of a house in San Antonio, owned by appellant. Appellee rented it to use for the purpose of a house of prostitution, and did use it all the time for that purpose. Appellant, who was plaintiff in the court below, knew to what purpose it would be put when he made the contract, and was cognizant of the fact that it was all the time being used for immoral and improper purposes. The case was tried by the judge of the trial court without the intervention of a jury, and he gave judgment for the

defendant, for the reason, as stated in his conclusions of law, "that the contract of lease was against public policy, and therefore void." In this action of the lower court, we conclude there was no error.

At the time the contract of lease was made, there was no statute making it a penal offense to rent a house for the purposes of prostitution, the amendment including the owner with the keeper in the criminal act having been passed on April 6, 1889, but this will have no importance in shaping the opinion to which we arrive in this cause. In every civilized community, and among all civilized peoples, the crime of prostitution is looked upon as one of the most prolific of depravity and subversive of the public morals. Statutes have been passed against it, the social ban has been placed upon it, and every moral influence has been exerted to check its evil influences. Under the statute of 1889 the owner of the house that is rented by him knowingly for purposes of prostitution is made just as criminal as the keeper. This is referred to, not because it will affect this decision, but it shows the trend of opinion of the law makers of the State. In the case of Conner v. Mackey, 20 Texas, 750, Judge Wheeler holds that a gambling consideration was void, whether the game was prohibited by law or not; the ground of the decision being that the contract was contrary to good morals and policy. In the case of Monroe v. Smelley, 25 Texas, 587, it is held that money due on a wager at ten pins, a game licensed at that time, could not be recovered, on the ground of public policy.

Appellant's counsel, in his ingenious brief, holds, that although appellant knew full well the purposes to which the house would be put, yet this merely existed in his mind, had no bearing on the contract of lease, and there was no connivance at the prostitution of the lessee. In support of this position, we are cited to a number of Texas decisions, which, in deference to counsel, we will briefly review. The case of Bishop v. Honey, 34 Texas, 346, is founded upon a contract to build a house to be used as a bawdy house, and the court rightly held that the builder should recover, because he was in no way interested in the business to be afterwards conducted in the house. "If," says the court in that decision, "the plaintiff is in any way the gainer by, or the partner in an alleged contract, one which is contra bonos mores, he can not recover upon such contract; he can not recover upon it if it be shown that he is particeps criminis." Again, in the same case, it is said: "In the case at bar the house was not to be paid for out of the proceeds of an illegal vocation. It was to be paid for as the work progressed upon it." The other case cited from 34 Texas is not in point. In the case of McKinney v. Andrews, 41 Texas, 366, the judge is undecided in that part of his opinion quoted by counsel, and rests the reversal of the case on other points. The point in that case was the illegality of the purpose for which the property

was to be used, and not upon the ground of contra bonos mores. The case of Labbe v. Corbett, 69 Texas, 504, is not in point.

We are referred by counsel to Greenhood on Public Policy, page 537, rule 460, where the author is treating of considerations involving the violation of laws; and one of his illustrations of a rule, that " a contract which is in itself legitimate is not void because the beneficiary thereof knows that the other party intends to use the subject matter to aid him in violating a law," is, "A lets lodgings to B, a prostitute, who carried on her business elsewhere.   A can recover rent."   The property was not used by her for plying her vicious vocation, and of course she was responsible for the rent.   The same author, under the head of " Crime, Prostitution, etc.," lays down the rule, that any promise "calculated to encourage immorality is void;" and gives as illustrations of the rule: "A assigned to B his lease of a house, knowing that he intended to use it as a brothel, receiving from him an excessive rent, which was to be paid out of the profits of the place.  B covenanted to indemnify A against any liability on the covenant in the lease to him.   He failed to do so, and A sued him.   He can not recover."   And " where the landlord permitted the prostitute to carry on her business in the rooms after ascertaining the use to which the premises were being put, the tenancy being weekly, rent was thereafter not recoverable."   See foot note 8, page 202, Greenh. on Pub. Pol.

The question we are considering is directly passed on in a case decided by the Supreme Court of Colorado, in 1891, in which it is held, that rent for a house, known by the owner to be used as a bawdy house, can not be recovered.   Daugherty v. Seymour, 26 Pac. Rep., 823.

This question is reviewed at some length by the United States Supreme Court, and it is held:   " The whole doctrine of avoiding contracts for illegality and immorality is founded upon public policy.   It is certainly contrary to public policy to give the aid of the courts to a vendor who knew that the goods were purchased, or to a lender who knew that his money was borrowed, for the purpose of being employed in the commission of a criminal act, injurious to society or to any of its members." Hanover v. Doane, 12 Wall., 342. "Any contract encouraging prostitution, or auxiliary to the keeping of a bawdy house, is void." Bish. on Con., sec. 496; Smith on Con., 195, 196.

It was perhaps unnecessary to fortify this opinion with authorities, although there may be some obscurity in decisions on the question at issue, and perchance may be some variance as to what circumstances will vitiate a contract on the grounds of public policy.   However that may be, it is the opinion of this court, that rent should not be recovered for a house knowingly let to a person who will use it, or who does use it, for the depraved and immoral purposes of prostitution.   It is not a question of whether women of this unfortunate class should be deprived of the shel-

ter of a roof, as counsel puts it, but a question of whether a court will enforce a contract founded upon a vicious and degraded occupation, and from which must spring the consideration of a contract.

The judgment is affirmed.

*Affirmed.*

Delivered October 4, 1893.