HAYES v. G. A. STOWERS FURNITURE CO. (No. 480.)*

(Court of Civil Appeals of Texas. El Paso. Nov. 11, 1915. On Rehearing, Dec. 2, 1915.)

1. APPEAL AND ERROR ⬅➡301—RECORD ON APPEAL—ASSIGNMENTS OF ERROR.

Assignments of error not included in the motion for a new trial cannot be considered on appeal, unless they arise after the motion for new trial has been filed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1743, 1753–1755; Dec. Dig. ⬅➡301.]

2. APPEAL AND ERROR ⬅➡301 — RECORD ON APPEAL—PROPRIETY OF JUDGMENT.

If a judgment could not properly have been rendered as it was rendered, the error was fundamental, and could not be waived by a failure to assign it as error in a motion for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1743, 1753–1755; Dec. Dig. ⬅➡301.]

3. JUDGMENT ⬅➡199 — NOTWITHSTANDING VERDICT—PROPRIETY.

It was error for the court on facts found by the jury in favor of the defendant to render judgment for the plaintiff.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 367–375; Dec. Dig. ⬅➡199.]

4. JUDGMENT ⬅➡199 — JUDGMENT NOTWITHSTANDING VERDICT.

A judgment non obstante veredicto is not permissible and cannot be sustained, but the court can only set aside a verdict contrary to the evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 367–375; Dec. Dig. ⬅➡199.]

5. SALES ⬅➡48—LEGALITY OF OBJECT.

Where the seller of furniture at the time of the sale agreed with the buyer that the furniture should be used in a bawdyhouse, and that the title to the goods should remain in the seller pending monthly payments on the goods, and the furniture was necessary for the operation of the house, the contract was for an illegal object, so that the courts will not enforce payment of installments due and unpaid.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 101–107; Dec. Dig. ⬅➡48.]

On Rehearing.

6. APPEAL AND ERROR ⬅➡209—MATTERS REVIEWABLE — PRESERVATION OF EXCEPTIONS.

Failure to raise the objection of insufficiency of evidence to sustain the verdict in the trial court precludes raising the objection for the first time on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1290–1298, 1300, 1303; Dec. Dig. ⬅➡209.]

Appeal from District Court, Harris County; A. R. Hamblen, Special Judge.

Action by the G. A. Stowers Furniture Company against Rose Hayes. From judgment for plaintiff, defendant appeals. Reversed, and judgment for defendant. On rehearing. Rehearing denied.

L. M. Williamson, Hutcheson & Hutcheson, and Heidingsfelders, all of Houston, for appellant. J. V. Meek, of Houston, for appellee.

WALTHALL, J. G. A. Stowers Furniture Company, appellee, brought this suit in the district court of Harris county, Tex., against Rose Hayes, appellant, for the amount of $2,200.77, interest and attorney's fees, alleged to be a balance of an indebtedness due for goods, wares, and merchandise (household furnishings) sold and delivered, and to foreclose certain mortgages on goods, wares, and merchandise, all itemized and described in the pleadings and exhibits. Appellant, in defense to the cause of action, pleaded that at the several times of the making of the contracts for the goods, wares, and merchandise for the value of which the suit is brought appellant was engaged in an illegal and unlawful business, to wit, in running a disorderly house in the restricted district in the city of Houston, Tex., which appellee well knew, and that said property leased by her of appellee was leased with the full knowledge, consent, and agreement on the part of appellee, for her to use in the furtherance of her said illegal and unlawful business, and that the appellee well knew that all payments that were to be made by her on the goods leased by her as aforesaid were to be derived by her from the proceeds of said illegal and unlawful business.

The appellee answered that it may be true that at the time of the purchases or some

of them set out in the several contracts the appellant may have been living in the restricted district of the city of Houston, and that her business, as alleged by her, might have been illegal and unlawful, and it may be true that some agent of appellee was aware of the fact, but appellee specially denies that there was any contract or agreement that the payments specified in said contracts to be made by appellant was to be paid out of money derived by her out of any illegal or unlawful business, occupation, or trade.

The case was submitted to the jury on special issues. The issues submitted to and found by the jury which we deem pertinent to the issues presented in appellant's several assignments of error are as follows:

"Special Issue No. 7: 'It is an admitted fact that at the time of the first purchase made by the defendant from the plaintiff of the furniture set out in exhibits attached to plaintiff's petition, amounting to $4,415.35, that it was her purpose to use same in an unlawful business, to wit, in running a bawdyhouse, and it is admitted that the plaintiff's agent, M. P. Strickland, knew that the furniture was to be so used. Now, answer the following question: Was there any agreement or contract between plaintiff's said agent, M. P. Strickland, and the defendant, that he should receive his pay out of the proceeds of said unlawful business and that he should expect his pay solely therefrom? Answer this question, "It was the agreement," or "It was not the agreement," as you find.' To this issue the jury answered: 'It was not the agreement.'

"Special Issue No. 8: 'When the defendant made the first purchase referred to in the preceding paragraph of $4,415.35, did E. F. Dupree state to plaintiff's agent, M. P. Strickland, that he would assist the defendant in paying therefor? Answer this question, "He did," or "He did not," as you find.' To this issue the jury answered: 'He did.'

"Special Issue No. 9: 'If, in answer to the preceding question you have answered that E. F. Dupree did state to plaintiff's agent that he would assist defendant in paying for said goods, then answer the following question: Did said promise on the part of E. F. Dupree influence plaintiff's agent to sell said goods to defendant, and did plaintiff's agent expect E. F. Dupree to assist defendant in paying for said goods? Answer this question "Yes" or "No," as you find.' To this issue the jury answered: 'Yes.'

"Special Issue No. 10: 'When plaintiff company sold to defendant the goods sued for, was there any agreement between plaintiff company, acting through its agents, that plaintiff should be a silent partner with the defendant in the conduct of the unlawful business alleged by her? Answer this question "Yes" or "No," as you find.' To this issue the jury answered: 'No.'

"Special Issue No. 11: 'When the plaintiff company sold the goods to the defendant, was there any agreement or understanding between plaintiff company's agent and the defendant that said goods should be used in an unlawful business, as alleged by defendant, to wit, the running of a bawdyhouse, or did defendant have a right to use said goods for any purpose she saw fit? Answer this question that "It was the contract that it should be used for a bawdyhouse," or that "Defendant should use said goods as she saw fit." ' To this issue the jury answered: 'It was the contract that it should be used for a bawdyhouse.'

"Special Issue No. 12: 'When the goods were sold by the plaintiff to the defendant, was there any agreement or understanding between plaintiff's agent and the defendant that the plaintiff was in any way to be the gainer from the illegal use from which the defendant might put said goods? Answer this question that, "There was such agreement," or "There was no such agreement," as you find.' To this issue the jury answered: 'There was no such arrangement.'

"Special Issue No. 13: 'If the defendant did run a bawdyhouse, as alleged by her, and use the goods bought from the plaintiff in furtherance of said business, then state whether or not any agent or employé of the plaintiff took any part in the conduct of such business. Answer this question, "They did," or "They did not." ' To this issue the jury answered: 'They did not.'

"Special Issue No. 14: 'When plaintiff sold defendant the first bill of goods amounting to $4,415.35, did E. F. Dupree sign the $300 worth of notes payable to plaintiff in part payment for said goods, and did the signing of said notes cause plaintiff's agent to agree to sell said goods to the defendant? Answer this question "Yes" or "No." ' To this issue the jury answered: 'Yes.'

"Special Issue No. 15: 'When the goods were sold to the defendant by plaintiff's agents, Walker and Willingham, was there any agreement between defendant and said agents that plaintiff should be paid out of the proceeds of running a disorderly house? Answer this question "Yes" or "No," as you find.' To this issue the jury answered: 'No.' "

On plaintiff's motion, the court rendered judgment in plaintiff's favor for $2,200.77, being the balance of the principal of its debt, together with interest and attorney's fees as provided in the contract, for costs of suit, ordered the foreclosure of the chattel mortgages, and, the property having been sequestered by plaintiff and replevied by defendant, the court ordered the property restored to plaintiff, and, if not restored, execution against defendant and her sureties on the replevy bonds.

Appellant filed a motion for a new trial, embraced in three paragraphs: The first, error "in entering judgment for plaintiff"; the second, error "in not entering judgment for the defendant"; and, third, error "in entering judgment for the plaintiff on the findings of the jury, because said findings are contrary to the law and the evidence."

[1] Appellant filed in the trial court assignments of error as under the old practice. Appellee objects to a consideration of any of the assignments because the grounds of error in the motion for a new trial are wholly insufficient under the statute and rules 67, 68, and 69 promulgated by the Supreme Court for the government of trial and appellate courts, and presents no error. Appellee objects to the consideration of any additional assignments the grounds of which are not found in the motion for new trial. The grounds of appellee's objection have so often been sustained by the appellate courts that we need do no more than refer to the statute and the rules now in force. It is only as to matters arising in the trial after the motion for new trial has been filed that could be made the ground of an assignment

separate and distinct from the grounds set up in the motion for a new trial.

[2] However, the grounds in the motion for new trial and the grounds of error in the assignments not contained in the motion all go to the question of the proper judgment to be entered on the above facts found by the jury. If judgment could not properly have been rendered for appellee on the facts established by the verdict, the error would, in our opinion, be fundamental, and would not be waived by a failure to assign it as error in a motion for a new trial.

[3] The question then recurs: Was it error to render judgment for appellee on the facts found by the jury? The issues tendered by the appellee in its pleadings and exhibits do not suggest an illegal demand. The only suggestion of the unlawfulness of the claim arises on appellant's answer. It might be further noted from the record before us that the statement by the trial court in submitting to the jury the seventh special issue above quoted that "it is an admitted fact that at the time of the first purchase made by the defendant from the plaintiff of the furniture * * * that it was her purpose to use same in an unlawful business, to wit, in running a bawdyhouse," and appellee's knowledge of its intended use, and the findings of the jury on the eleventh issue to the effect "that it was the contract between appellant and appellee when the goods were sold that the goods should be used for a bawdyhouse," are the only facts in the record, submitted to and found by the jury that suggest an unlawful debt. In answer to the seventh issue the jury found that there was no agreement between appellant and appellee that appellee should receive its pay for the goods sold out of the proceeds of the unlawful business. Then all that remains of the seventh issue is that appellee knew when the goods were sold that it was appellant's purpose to use the goods in an unlawful business. The fact stated by the court as admitted in submitting the seventh issue, the fact found by the jury in the eleventh finding, and the provisions in the written contract for the sale and delivery of the goods, declared upon in appellee's petition and introduced in evidence, might be stated thus: Appellee, with full knowledge that appellant was buying household goods for the purpose of installing and furnishing a house to be used by her as a bawdyhouse in the business of running a bawdyhouse in the restricted district of the city of Houston, sold and delivered to appellant the household goods, for partly cash and partly on time payments, and at the time of their sale and delivery agreed with appellant that the goods should be used for the bawdyhouse then being furnished, and in the contract of sale and delivery of said goods provided for the payment of the unpaid part of the consideration for the goods by monthly installments, that the title to the goods should remain in appellee until fully paid for, and that the goods sold appellant should be kept at her place of business, and not removed therefrom without the written consent of appellee. Appellee in its brief undertakes to account for the finding of the jury in answer to the eleventh issue submitted to them, to the effect that, when appellee sold the goods to appellant, it was the contract between them that the goods should be used for a bawdyhouse, and insists that the finding of the jury is unsupported by any proof. However that may be, the court must render judgment in accordance with the facts found by the jury.

[4] Judgment non obstante veredicto is not permissible under our practice. The court can set aside a verdict rendered contrary to the evidence, but it has no authority to render judgment contrary to the facts found by the verdict. It can only set such verdict aside. The judgment herein rendered therefore cannot be sustained upon the theory that the eleventh finding is unsupported by the evidence.

[5] Are the facts found by the jury and the above extracts taken from the contract of sale of the goods sufficient to outlaw the appellee's claim and make it uncollectible through the courts?

We are of the opinion that a contract for the sale of the household goods made with a knowledge of the unlawful use to which the goods were to be put, contemplated by the parties at the time of their sale and delivery, and an agreement made and entered into between the parties to the contract of sale that the goods should be so used, and that during the time of such use the goods to be kept at such place and in such unlawful use, as found by the jury, whose finding we approve, coupled with the contract pleaded by the appellee, which shows that in the meantime the title to the goods to remain in the seller and the unpaid balance of the contract price to be paid in monthly installments, is affected by such vice as to render the contract unenforceable in the courts. We are aware of the decisions that hold that a mere knowledge that the goods may be put to an unlawful use is not sufficient to prevent the collection of the claim. But the facts of this case go far beyond a mere knowledge of an unlawful use. Here is an agreement that the goods to which appellee retains title should be put to the unlawful use, thereby necessarily participating in the wrong. The appellant was furnishing a house to be used as a bawdyhouse. The house to be so used must necessarily be furnished. It could not have been used without the aid rendered her by the appellee. The furniture was necessary to the use of the house. With the house furnished she could and did make unlawful use of both house and furniture, and that with full

knowledge of and agreement with appellee as to the character of its use. The rule is well established that any contract, promise, or agreement "calculated to encourage immorality is void." Hunstock v. Palmer, 4 Tex. Civ. App. 459, 23 S. W. 294. The Supreme Court of the United States held, in Hanauer v. Doane, 12 Wall. 342, 20 L. Ed. 439:

"It is contrary to public policy to give the aid of the courts to a vendor who knew that his goods were purchased * * * for the purpose of being employed in the commission of a criminal act, injurious to society or to any of its members."

Bishop on Contracts, § 496, and Smith on Contracts, 195, 196, announce the principle that any contract encouraging prostitution or auxiliary to the keeping of a bawdyhouse is void.

The Court of Civil Appeals, in the above case of Hunstock v. Palmer, said, after reviewing a number of cases:

"It is the opinion of this court that rent should not be recovered for a house knowingly let to a person who will use it, or who does use it, for the depraved and immoral purposes of prostitution."

The court put the decision on the ground that it was a question of whether a court will enforce a contract founded upon a vicious and degraded occupation, and from which must spring the consideration of the contract.

The Third Court of Civil Appeals, in the case of Anderson v. Freeman, 100 S. W. 350, where the defense was that the consideration for a note and chattel mortgage on certain furniture was for the immoral purpose of enabling Anderson to use the furniture in carrying on and conducting a house of prostitution, and where the court reached the conclusion and inference to be drawn from the evidence to the effect that the transaction was to enable Anderson to continue the immoral business, and where Freeman knew that from the continuance of the business Anderson expected to obtain money that would enable him to discharge the note and mortgage, the court held that the remedy upon the note must fall, because of the taint of the consideration in part.

We have reviewed a great number of cases, and, while they are not all agreed as to what facts are necessary to render a claim founded on an immoral consideration uncollectible through the courts, they are in harmony on the proposition that, where a transaction is had with knowledge, purpose, and effect to aid another in the commission of an unlawful act, a consideration founded upon such transaction cannot be enforced. We believe the court was in error in rendering judgment for appellee on the facts found by the jury.

The judgment is reversed, and here rendered for appellant.

## On Rehearing.

In its motion for a rehearing appellee insists that this court is in error in basing our conclusions upon the assumption that the sale of the goods to Rose Hayes was made with knowledge as to the character of their intended use, and insists that there is no proof nor contention that any officer of the furniture company knew anything about the use to which the furniture would be put, except as to the first purchase, amounting to $4,415.35, sold by Mr. Strickland, the manager of the corporation. Appellant points out items constituting subsequent sales amounting to $1,300, and insists that appellee should have judgment therefor, because Willingham and Walker, the salesmen who made the sales subsequent to the first, had no acquaintance with appellant, merely knew her to be a customer of the house, had no knowledge of the intended use of the goods, and that all purchases subsequent to the first were made without knowledge of Strickland and at a time when Strickland was out of the city.

[6] Under the findings of the jury, appellee was not entitled to recover. Appellee's statement that there is no evidence or not sufficient evidence to sustain the findings of the jury is not sustained by the record. There was ample evidence to sustain the findings. Appellee did not raise the question of the sufficiency of the evidence in the trial court, and is not in a position to question its sufficiency here.

The motion is overruled.