**HIBBLER v. HOWE.** (No. 530.)

Court of Civil Appeals of Texas. Waco.
May 19, 1927.

**1. Gaming** ⊜⟶**12—Contracts to purchase cotton futures, without intent to deliver, held void as "gambling transactions" (Pen. Code 1925, arts. 657–659, 661).**

Contracts for purchase of cotton futures, without intention to deliver cotton or actually execute contracts, which all parties understood were to be settled according to future public market quotations on New Orleans exchange, *held* gambling transactions, contrary to public policy and wholly void and unenforceable, under Pen. Code 1925, arts. 657–659, 661.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gambling Transaction.]

**2. Gaming** ⊜⟶**36—Broker receiving and forwarding application for illegal purchase of cotton futures was particeps criminis and cannot recover for services rendered or losses incurred (Pen. Code 1925, arts. 657–659, 661).**

Broker receiving and forwarding to his associates in another city client's application to purchase cotton futures, without intent to deliver cotton or actually execute contracts, made himself party to such unlawful design and cannot recover from client for services rendered or losses incurred, in view of Pen. Code 1925, arts. 657–659, 661.

**3. Gaming** ⊜⟶**37—Agreement to pay broker additional margins on illegal purchases of cotton futures held not to authorize recovery thereof (Pen. Code 1925, arts. 657–659, 661).**

Client's agreement to pay broker amount of additional margins on purchases of cotton futures, in violation of Pen. Code 1925, arts. 657–659, 661 *held* not to warrant recovery thereof; resort to illegal contract being necessary to show benefit moving to client as consideration for promise.

Appeal from Kaufman County Court; Chas. Ashworth, Judge.

Action by Paul M. Howe, doing business in the name of Paul Howe & Co., against G. M. Hibbler. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Thos. R. Bond, of Terrell, for appellant.

Wynne & Wynne, of Kaufman, for appellee.

STANFORD, J. Suit by appellee, Paul Howe doing business in the name of Paul Howe & Co., against appellant, G. M. Hibbler, to recover on an account for $862.18, alleged to have been due by appellant to Wells & Stanton, and the payment of which was guaranteed by appellee. It was further alleged that appellant failed to pay said amount to Wells & Stanton, and that appellee was required to pay same, which he did at the request of appellant, by reason of which appellant became liable to appellee for said amount. Among other defenses not necessary to mention here, appellant pleaded, in substance, that appellee was engaged in dealing in cotton futures at Terrell in Kaufman county, Tex., and that in the conducting of said business appellee was associated with Wells & Stanton of New Orleans; that said business was conducted with no intention of the cotton bought or sold being delivered, but only as a gambling transaction on the fluctuations of the price of cotton; that appellant bought cotton futures through appellee of Terrell, Tex., and his associates, Wells & Stanton of New Orleans, and put up $1,000 as a margin on same; that said cotton declined until said margin was consumed, and appellant was called upon to put up an additional margin by reason of the continued decline, which he refused to do, and his purchase was canceled, and the said Wells & Stanton claimed he was due them the $862.18 as additional losses on said futures; that he was not liable for said amount because it grew out of a gambling transaction, void and contrary to public policy; and that if appellee paid same to Wells & Stanton, he did so, not at the request nor by permission of appellant, but on his own initiative. Appellee by supplemental petition sought to avoid the effect of said claim arising out of a gambling transaction by alleging, in substance, that under his agreement with Wells & Stanton and the custom governing said business, it was necessary for him to and he did become responsible to Wells & Stanton for the additional margins which appellant failed to put up, and that it was necessary for him to pay same in order to hold his seat on the New Orleans exchange, etc., and that after he had paid same, he had a settlement agreement with appellant and that appellant agreed said balance of $862.18 was correct and agreed to pay same to him. In response to special issues the jury found, in substance: (1) That after appellee had paid the amount of the account sued upon to Wells & Stanton, appellant and appellee did make an agreement of settlement of said account. (2) That appellant did agree to pay the amount agreed upon to appellee the next week. (3) That the amount agreed upon by appellant and appellee was $862.18. On these findings the court entered judgment for appellee for $862.18, which is properly presented here for review.

After the close of the evidence appellant requested the court to instruct a verdict in his favor, and assigns error to the action of the court in refusing to so do. The record discloses beyond any question that appellee, located at Terrell, Tex., in connection with his associates, Wells & Stanton, located at New Orleans, was engaged in what is termed dealing in cotton futures, the buying and selling of cotton futures on the future market at

New Orleans or other places; that is, customers would place with appellee orders to buy or sell futures, appellee would wire the order to Wells & Stanton at New Orleans, through whom he dealt, and said New Orleans brokers would place the order or contract on the cotton exchange in New Orleans and buy or sell so many bales of cotton, the price regulating and controlling as quoted on the exchange for future months, with no intention or agreement for the actual delivery of the cotton bought or sold. The customer's losses or profits were determined exclusively by the fluctuations of the market. It was simply gambling on the future price of cotton. If the customer won, then a commission was paid appellee and his New Orleans associates out of the customer's profits. If the customer lost, then such loss was collected by said brokers, and their commissions paid out of the losses so collected. The record further shows it was the custom or agreement between appellee and his New Orleans associates that appellee in taking an order from a customer to buy or sell on the future market would collect a certain amount as a margin, and in case the market went against such customer, appellee would collect additional margins as might be determined by said New Orleans brokers, and was responsible to his New Orleans associates for said margins and additional margins, if any. In this case appellant bought cotton futures through appellee and his said New Orleans associates, and put up a margin of $1,000. By reason of the decline an additional margin of $862.18 was demanded by Wells & Stanton, the New Orleans brokers, and a bill for same sent by said brokers to appellant. On appellant's failure to pay, his contract was canceled and said $862.18 charged by Wells & Stanton to appellee, as per the custom or agreement between said brokers, appellee testifying that if he had refused to pay, he would have lost his seat on the New Orleans exchange. Appellee testified further:

"No; I did not pay the $862.18 for Mr. Hibbler based upon any promise he made to me whatever; I was not influenced or controlled in the making of such payment by any promise from Mr. Hibbler. It was paid, or rather charged to my account by Wells & Stanton under the rules and regulations existing between brokers as above explained. I am compelled to permit that to be done or lose my seat on the cotton exchange in New Orleans."

Appellant on this point testified:

"I didn't tell Mr. Howe to pay Wells & Stanton anything for me. I did tell him I did not want him to lose anything on my account, and if I was ever able to make the money as easy as I lost it, then I would pay him back."

[1-3] There is no contention in this case that there was any bona fide intention on the part of appellant or appellee or their New Orleans associates, or the parties from whom purchases of cotton futures were made, that any cotton should be delivered or said contract or contracts actually executed, but all parties understood fully that said contract or contracts were to be settled according to, or upon the basis of, the future public market quotations or prices made on the New Orleans exchange. So it is tacitly admitted that said transaction was clearly within the prohibition of articles 657, 658, 659, and 661 of our Criminal Statutes of 1925 (Pen. Code), and the settled decisions of our appellate courts, which denounce same as a gambling transaction and declare such contracts contrary to public policy and wholly void and unenforceable. The illegal contract was actually made through the New Orleans brokers, but we think appellee, who received appellant's application to purchase such futures and forwarded same to his New Orleans associates, and by so doing brought the parties together for the very purpose of entering into said illegal contract, thereby made himself a party to said unlawful design and became particeps criminis, and cannot recover for services rendered or losses incurred by himself in carrying out said illegal contract. The record discloses that appellee and his New Orleans associates acted together in bringing about the illegal contract, and were jointly interested in same in that they were to share the commissions due upon the loss sought to be collected; so appellee has no better right of recovery than would the New Orleans brokers, or the other parties to said unlawful contracts if this suit were being prosecuted by them. And the fact a settlement agreement of the matters arising out of said illegal contract between appellant and appellee was had, whereby it was agreed appellant was due appellee the amount sued for and promised to pay same, we think, furnishes no grounds for recovery. Appellant duly pleaded a want of consideration for such promise. The mere promise on the part of appellant to appellee to pay him the $862.18 could not constitute a consideration and in order to show any consideration for such promise, under the admitted facts of this case, or in order to show some benefit moving to appellant as a consideration for said promise, resort would necessarily have to be made to the illegal wagering or gambling contract and find it in the chance appellant had of winning. In the case of Floyd v. Patterson, 72 Tex. 205, 10 S. W. 527 (13 Am. St. Rep. 787), our Supreme Court said:

"But if the transaction has been completed, and another grows out of it collateral to it, dependent upon a new consideration, the new contract is not vitiated by the taint of the old one, and it will be enforced. 'It has been observed that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case.'" Floyd v.

Patterson, supra, and authorities cited; Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 638, 71 Am. St. Rep. 837.

The record shows the claim sued upon arose out of said illegal contract, and if there was any consideration for the promise to pay by appellant or any consideration on which to base liability against appellant, it is found only in said illegal contract, which the courts of this state will not investigate but will leave the parties as they find them. We think there is no theory on which appellee was entitled to recover. Articles 657, 658, 659, and 661, Revised Criminal Statutes 1925 (Pen. Code); Seeligson v. Lewis & Williams, 65 Tex. 215, 57 Am. Rep. 593; Beer et al. v. Landman (Tex. Civ. App.) 30 S. W. 64; Beer et al. v. Landman (Tex. Civ. App.) 30 S. W. 726; Logan et al. v. Norris et al., 100 Tex. 228, 97 S. W. 820; Kenedy Merc. Co. v. Ainsworth (Tex. Civ. App.) 258 S. W. 205; Anderson v. Freeman (Tex. Civ. App.) 100 S. W. 350.

We, sustain the above assignment and reverse the judgment of the trial court and hereby render judgment for appellant.