**EUGENE B. SMITH & CO., Inc.**
v.
**RUSSEK et al.**
No. 14793.

United States Court of Appeals,
Fifth Circuit.
April 30, 1954.

Fred B. Wagner, Brownsville, Tex., for appellant.

T. Gilbert Sharpe, Reynaldo G. Garza and Sharpe, Cunningham & Garza, Brownsville, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

This is an action for the breach of an alleged contract to buy 1,665 bales of cotton at 81.75 cents per pound. The cotton was grown in Mexico; but the contract was made and was to be performed in Brownsville, Texas, where the cotton was to be delivered by the seller and paid for by the buyer. Upon a plenary trial by jury in the Court below, the appellee was awarded a verdict and judgment against the appellant for $18,731 with interest at 6% per annum from April 12, 1951, and costs. The errors relied on by appellant are that appellee was not able to deliver the cotton; that an issue as to the ownership of the cotton was ignored by the Court; that the seller's obligation to notify the buyer of the former's acceptance of the buyer's offer was not submitted to the jury; that the measure of damages was improperly submitted to the jury; and that interest as damages was improperly allowed.

In 1951 and during prior years, the appellee was a large cotton grower in the San Pedro area of Torreon, Mexico. In March, 1951, he was offering to cotton traders 2,965 bales of Mexican cotton. On Saturday morning, March 10, 1951, the manager of appellant's Brownsville office admittedly made an offer for 1,665 bales of this cotton at 81.75 cents per pound. The parties were in dispute as to the description of the cotton and as to the length of time that the offer was to remain open, but the appellant concedes that these two questions of fact are foreclosed against it by the verdict of the jury, because there was evidence to sustain the verdict on these two points.

The fact that some of the cotton did not meet the descriptive terms of the contract as to grade and staple did not defeat appellee's right to recover damages. The evidence shows that appellee was ready, able, and willing, strictly to comply with the contract, and would have done so except for appellant's anticipatory breach thereof. The appellant's denial of the existence of the contract and its refusal to allow appellee an opportunity to perform it, either strictly or under the custom of the cotton trade, based upon grounds not involving the grade or staple of the cotton, constituted a waiver of tender and strict compliance by the appellee. The appellant's main contention upon this point is that the 1,665 bales were unique in the characteristic of being Mexican cotton in warehouses at Brownsville, Texas, not subject to the embargo of the government of the United States, which prohibited the exportation of domestic cotton. This embargo created a big demand for Mexican cotton, the world price of which went to 86 cents per pound, higher than it had been since the War between the States. At the same time that

foreign buyers were paying over 80 cents per pound for Mexican cotton, domestic cotton was selling in the United States for about half the foreign figure. The situation resulted in a flight of Mexican cotton from that country, to get out ahead of an expected Mexican embargo, which did go into effect shortly after these 1,665 bales were exported from Mexico to the United States.

■■ Assuming arguendo that there was a contract, the appellant contends that there is involved here a contract not for just any 1,665 bales of strict middling, one and ⅟₁₆ inch cotton, but for 1,665 bales of Mexican cotton grown by Oscar Russek. Undoubtedly the appellant understood that it was buying Mexican cotton, but it was wholly unnecessary that the cotton be grown or owned by any particular person. There was no finding by the jury, and no request for submission of an issue to the jury, to the effect that the cotton involved was required to be grown by the appellee. The verdict of the jury established the fact that there was a binding contract between the parties, and the evidence established the accepted usage and custom of permitting the seller to comply with the contract by being penalized on the price of inferior bales or replacing the inferior ones with other cotton conforming to the specifications of the contract. The issue as to the ownership of the cotton was submitted to the jury, together with the issue as to whether the seller was ready, able, and willing to perform the contract. An affirmative finding on the issues is implicit in the verdict, which we think is amply supported by the evidence. The appellant contends, in point 3, that the issue as to the seller's obligation to notify the buyer of his acceptance of the buyer's offer was not submitted to the jury, but we think this exception is not well taken. The Court's charge was very full and specific, covering between 10 and 15 typewritten pages of the record, on p. 570 of which the Court said: "So you must determine whether or not all of the essential terms of the contract were agreed upon by the parties, and whether the offer which Mr. Myrick made comprehended all the essential elements of the contract and whether that offer was accepted within the time which was placed upon it." That part of the charge, with what followed and preceded it, we think was amply sufficient to submit the issue correctly to the jury.

■■ The fourth point relied on by appellant is that the measure of damages was improperly submitted to the jury. The trial Court, in substance, instructed the jury that, if it found for the plaintiff, the damages to be awarded him should be measured by the difference between the contract price and the amount for which appellee resold the cotton, provided that, if a reasonable man would have resold earlier, then the figure to be deducted from the contract price was the sum that a reasonable man would have obtained by such earlier sale. The jury clearly disregarded this instruction. In our opinion, the correct measure of damages for the anticipatory breach of this executory contract was the difference between the contract price and the market value of the cotton at the time and place of delivery contemplated by the parties. The amount of the verdict in this case appears to be about the lowest possible sum that could have been awarded under the evidence, regardless of the measure of damages either as stated by the trial Court or as deemed by us to be correct. It is plain that the error, if any, in the Court's charge with reference to the measure of damages did not result in any prejudice to the appellant.

The appellee's argument on this point, with the correctness of which we agree, demonstrates that appellant's own theory of the measure of damages was adopted by the jury: "The evidence shows that the 1665 bales of cotton owned by Appellee weighed a total of 836,379 pounds. (R. 169—200 bales sold to Sonnen March 15, weighed 99,616; and R. 284, the 1465 bales sold to Amex, classified by Plitt weighed 736,763 pounds). The average weight per bale would be 502.3 lbs.

"The evidence shows a sale on March 15, 1951 of 500 bales of cotton to Sonnen, 200 belonging to Appellee and 300 belonging to his brother (R. 351; 161–165) at 79.50 cents per pound (R. 350). There was no other evidence of a higher value on said date. The value of Appellee's cotton on March 15, 1951, under such evidence was 2.25 cents less than the contract price of 81.75 which Appellant offered on March 10, 1951.

"836,379 pounds multiplied by 2.25 cents is the sum of $18,818.52. The amount of the verdict was $18,731.00, or $87.52 less. Apparently, the jury multiplied the 1665 bales by 500 pounds which would be 832,500 pounds, and then multiplied this amount by 2.25 cents which would give $18,731.25.

"For the sake of argument, let us accept Appellant's contention that immediate delivery was called for and that would mean three days, excluding Sunday, from the date of the contract. (Appellant's brief, P. 27). Appellee still would have had through March 14th for delivery if it is assumed that Appellant's repudiation was final on March 11th (Appellant's Brief, P. 28). On this basis, Appellee was not required to sell the cotton to others until March 15th.

"As is set out above, the value of Appellee's cotton on March 15 was at least 2.25 per pound less than the contract price, and such difference constituted the basis of the Jury verdict. Such being the case, the verdict was the lowest amount possible under the evidence, and Appellant is not in position to complain under its own theory."

■■ The final alleged error relied on by the appellant is that interest as damages was improperly allowed. The appellee sued for interest prior to judgment in its original complaint, but failed to ask for it in its first amended complaint except in the prayer for general relief. Nevertheless, the judgment appealed from allows interest at the rate of six per cent per annum on $18,731 from April 12, 1951, to May 4, 1953. Under Sec. 1961 of Title 28 U.S.C., interest is allowed on any money judgment recovered in any civil case in a district court at the rate allowed by state law. The allowance of interest was not a part of the verdict in this case but was included in the judgment by the court, which we think was proper. The case of City of Texarkana v. Arkansas Louisiana Gas Co., 5 Cir., 118 F.2d 289, cited by appellant, involved litigation which was instituted prior to the effective date of the Federal Rules of Civil Procedure, 28 U.S.C.A. In the present case, which is governed by the federal rules of procedure, the court rendered judgment for interest on the jury's award. Rule 54(c) does not mention interest but provides that every final judgment shall grant the relief to which the party is entitled, even if the party has not demanded such relief in his pleadings. The right to recover interest may rest upon a state or federal statute or be allowed as an element of damages.

■ In Texas, interest may be added as a matter of law by the court in entering judgment on the verdict when it is certain that the jury has not already included it. City of Texarkana v. Arkansas Louisiana Gas Co., 118 F.2d 289. In Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265, the court said that one who has had the use of money owing to another, justly may be required to pay interest from the time the payment should have been made; that generally interest is not allowed on unliquidated damages but, when necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages. Corbin On Contracts says: "If the property in the goods never passes to the buyer, the seller has a right to the contract price, less the market value of the goods that remain in his possession. This value may or may not be determinable by ascertainable and definite market prices. In any case he has a right to interest on the difference that is determined by the verdict of the jury, if the plaintiff can and does prove the amount of his injury by establishing a

market value." Vol. 5, Sec. 1048, p. 250. See also Texas Co. of Mexico v. Roos, 5 Cir., 43 F.2d 1. In Pierce Oil Corp. v. Gilmer Oil Co., Tex.Civ.App., 230 S.W. 1116, 1119, error dismissed for want of jurisdiction, the court said: "The contract was breached by its repudiation by the Pierce Oil Corporation [defendant], about April 1st. The plaintiff had the right to accept the repudiation as a breach. It did this by making contracts for the sale of the oil to other parties, and had the right immediately to sue for the breach and recover his damages. Texas Seed & Floral Co. v. Chicago, etc., Co. [Tex.Civ.App.], 187 S.W. 747. Plaintiff's cause of action for the damages thus accrued at the time of the breach, and it was entitled to its damages as of that date." See also Barron & Holtzoff, Federal Practice & Procedure, Sec. 1194.

Affirmed.