**Pat REED, Appellant,**

**v.**

**George J. FULTON, Appellee.**

**No. 79.**

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 12, 1964.

Rehearing Denied Dec. 3, 1964.

James E. Bock, of Mayer, Mayer & Levin, Dallas, for appellant.

Milton Walton, of Bloch & Walton, Corpus Christi, for appellee.

GREEN, Chief Justice.

Pat Reed, appellant, hereinafter called Reed, filed suit in district court for damages against George J. Fulton, appellee and cross-appellant, hereinafter referred to as Fulton, alleging breach of contract. The written contract between the two, signed in Dallas, Texas, September 15, 1959, involved the sale by Reed to Fulton of a champion Greyhound racing dog named Rio Grande Rose for $6,000.00, and two other greyhounds for $250.00, with the proviso that Reed should have the option to repurchase Rio Grande Rose for $1.00 within sixty days after the running of the American Greyhound Derby at Taunton, Massachusetts, in 1961. The testimony disclosed the date of this race as about October 21, 1961. Fulton agreed that upon the exercise of this option by Reed he would return the dog to Reed in Dallas, Texas, within two weeks. The contract also provided for the delivery by Fulton to Reed of a Greyhound, Milam Choice, forthwith after execution of the contract. Other provisions in the contract material to this appeal will be discussed later.

Neither dog was delivered by Fulton to Reed, Milam Choice having been put to death by Fulton and Fulton having refused to return Rio Grande Rose, though Reed exercised his option and made due demand and tender of the $1.00 by registered letter dated November 1, 1961. The district court on a trial without a jury ruled that Fulton had breached the contract, found the damages to Reed as a result thereof at the time of the breach to be $2,500.00 for failure to return Rio Grande Rose and $100.00 for failure to deliver Milam Choice, and rendered judgment for Reed against Fulton for $2,600.00 with interest at 6% per annum from date of judgment.

Reed's appeal is based on his contentions that the amount of his recovery as to Rio Grande Rose was inadequate under the testimony, and that the court erred in failing to award liquidated damages in the sum of $10,000.00 due to Fulton's failure to insure this dog as provided in the contract. Reed also says that interest on the amount of damages awarded should run from the date of the breach of the contract.

Fulton contends here by cross-points that the contract was invalid (1) because it was a gambling contract involving gambling paraphernalia, and (2) because it was obtained by force and duress, and that the trial court erred in granting any recovery to Reed. These defenses were included in Fulton's pleadings in the trial court.

We shall first consider the cross-points of Fulton, since if either of them should be sustained the appeal would be disposed of regardless of any ruling on Reed's points.

Reed and Fulton each owned kennels of greyhound racing dogs, and each was at the times in question interested in the business of raising and breeding such dogs, and racing them in states where dog races for cash prizes and pari-mutuel betting were legal. At the commencement of the trial before the court, the parties stipulated that prior to the execution of the contract of September 15, 1959, Reed and Fulton had raced Rio Grande Rose in jurisdictions which permitted such racing, and that at the time of signing the contract Reed knew, or had reason to believe, that the sole purpose of

Fulton in purchasing the dog was to race it with the expectation of earning purses thereby at race tracks in jurisdictions where racing and pari-mutuel betting is permitted. It was further stipulated that prior to entering into the contract, Reed knew that while Rio Grande Rose had been in Fulton's possession he had raced the dog and won substantial sums in races where dogs raced for cash stakes. The evidence shows that between September 15, 1959, and November 1, 1961, Fulton continued to race Rio Grande Rose very successfully in states which permitted pari-mutuel betting on such races.

The cases cited by Fulton in support of his contention that the contract in question was invalid as a gambling contract all concern actions prohibited or made unlawful by our penal statutes. Reed v. Brewer, 90 Tex. 144, 37 S.W. 418; Ohlson v. Wilson, 31 Tex.Civ.App. 178, 71 S.W. 768, n. w. h.; Hibbler v. Howe, Tex.Civ.App., 295 S.W. 299, n. w. h.; Hafale v. Canfield Manufacturing Co., Tex.Civ.App., 268 S.W. 986, n. w. h.; Hayes v. G. A. Stowers Furniture Co., Tex.Civ.App., 180 S.W. 149, writ ref.; Mihovil v. Hill, Tex.Civ.App., 118 S.W.2d 615; Schepps v. City of El Paso, Tex.Civ.App., 338 S.W.2d 955, writ ref., n. r. e.

■ There is no statute, so far as we have been able to determine, which prohibits dog races in Texas, or raising dogs or other animals for racing purposes. However, betting in Texas on the results of dog races, whether held in the state or elsewhere, is illegal. Article 646a, Vernon's Ann.Penal Code of Texas. But there is no evidence that there was any illegal betting on Rio Grande Rose or any of the other dogs named in the contract, or that any of the sums realized by Fulton as the result of racing Rio Grande Rose was won by the commission of any unlawful gambling. The record reflects that the dog was raced only in jurisdictions where pari-mutuel betting on dog races was legal, and that no betting on such races occurred in Texas.

■ A contract to do a thing which cannot be performed without a violation of the law is void. But where illegality does not appear on the face of the contract it will not be held void unless facts showing illegality are before the court. Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146, and cases cited; Kahn v. Harris, Upham & Co., Tex.Civ.App., 247 S.W.2d 139, aff'd. 151 Tex. 655, 253 S.W.2d 647.

■ The trial court did not err in refusing to find that the contract was unenforceable by reason of being an illegal gambling contract. Fulton's cross-points one and two are overruled.

Cross-appellant Fulton's remaining cross-points are directed toward his proposition that the contract in question was a product of duress practiced upon Fulton by Reed, and was hence voidable and unenforceable, and that the trial court erred in granting any relief to Reed.

The evidence reflects that prior to June, 1959, Rio Grande Rose was owned by one Albritton. In March, 1959, Albritton delivered possession of the dog to Fulton under a lease agreement. In June, 1959, while the dog was in Fulton's possession, Albritton executed a bill of sale selling Rio Grande Rose to Reed. Thereupon, Reed caused the dog to be forcibly taken from the possession of Fulton in Denver, Colorado. Litigation between Reed and Fulton over rights to Rio Grande Rose followed, both in Kansas and in Dallas, Texas. Fulton testified that he had commitments to race the dog in various states where pari-mutuel betting was permitted, and that it would be very embarrassing and expensive to him to be forced to break these commitments, and that Reed took advantage of this situation to cause him to enter into the contract. During the trial of the Dallas case, the contract between Reed and Fulton involved in this suit dated September 15, 1959, was executed, as a result of which the parties agreed to dismiss all pending litigation between them involving the ownership, regis-

tration, or right to possession of any dog named in the contract.

 In his findings of facts, the trial court found that "the law suit in Dallas could have been tried, but was not tried, because the parties entered into a contract of settlement. The court is of the opinion that duress was not involved in the settlement." The evidence fully supports this finding of fact, and all of Fulton's cross-points concerning the defense of duress, including his cross-points as to the court's refusal to find incidental facts as to such issue, are overruled.

 We proceed to appellant Reed's Points 1 and 2 to the effect that the amount of the trial court's findings of damages as the result of Fulton's breach of the contract as to Rio Grande Rose was inadequate. According to the evidence, Rio Grande Rose at the time of the execution of the contract in September, 1959, had a racing life of from two to two and a half more years, after which it would be of no value as a racing dog. Thereafter, its value would be only as a breeding dog to have puppies, or as a pet. There is in the record testimony that the value of Rio Grande Rose in November, 1961, after her racing days were over, was anywhere from $500.00 to $10,000.00 or more. On such conflicting evidence, the trial court acted within its sound discretion in fixing the value of Rio Grande Rose at that time at $2,500.00. Reed's points one and two, assigning as error the inadequacy of this finding, are overruled.

Appellant Reed's Points 3 to 9 inclusive concern the alleged error of the trial court in not rendering judgment in favor of Reed for $10,000.00 liquidated damages due to Fulton's failure and/or refusal to provide life insurance on the dog Rio Grande Rose as provided in the contract sued on.

The provisions of the contract relied on by Reed to support this contention are as follows:

"VI. It is further agreed by and between the parties that George J. Fulton will cause life insurance to be issued on Rio Grande Rose; that George J. Fulton will pay the premiums for said life insurance; that said life insurance will be in an amount at least equivalent to the purchase price of the dog, but not more than Ten Thousand Dollars ($10,000.00), George J. Fulton further agrees that the beneficiary of such policy shall be the said Pat Reed and that the policy or such evidence of insurance as may be received by George J. Fulton shall be delivered to the said Pat Reed. George J. Fulton agrees to use reasonable efforts to maintain said insurance upon the dog Rio Grande Rose until the time for the exercise of the aforementioned option to re-purchase has expired or until such option has been exercised.

\* \* \* \* \* \*

"IX. It is further agreed by and between the parties by way of liquidated damages that the sum of Ten Thousand Dollars ($10,000.00) is a fair and reasonable sum to be assessed as damages if the parties, or either of them, shall violate the spirit of this agreement in the following particulars;

"(a) Should George J. Fulton refuse to insure the dog Rio Grande Rose as aforesaid, or should George J. Fulton cancel such insurance in force during the period of this agreement, then, in that event the said George J. Fulton shall be liable for the sum of Ten Thousand Dollars ($10,000.00) by way of liquidated damages."

Concerning this claim of Reed's, the trial court made the following findings of fact and conclusions of law:

"5. That George J. Fulton used reasonable efforts to obtain and maintain insurance on Rio Grande Rose in an amount of $6,000.00 as required by the contract.

"6. That insurance coverage was not available on Rio Grande Rose that would have complied with the contract.

"7. That George J. Fulton did not refuse to insure Rio Grande Rose for $6,000.00 minimum to $10,000.00 maximum coverage.

"8. That George J. Fulton did not cancel insurance in force on Rio Grande Rose.

"9. That Rio Grande Rose was alive at all times material to the contract and was alive at the time of trial and judgment.

"10. That Pat Reed suffered no damage as a result of the lack of insurance coverage on Rio Grande Rose."

## CONCLUSIONS OF LAW.

"1. The Court finds insufficient evidence from liquidated damages or exemplary damages;

"2. The Court finds insufficient evidence to support the insurance policy claim."

■ Rio Grande Rose was alive at the time of the trial of this suit. Reed did not choose to sue for her possession, but sued for damages instead. The trial court's finding that Reed was not damaged by Fulton's failure to secure insurance on the dog's life is fully supported by the evidence.

■ The liability for liquidated damages as stated in the contract was not based on Fulton's *failure* to insure Rio Grande Rose, but upon his *refusal* to insure, or his cancellation of such insurance. Fulton testified that he applied to a number of insurance agencies for life insurance on the dog as provided by the contract, but that he was unable to secure such insurance. The evidence reflects and the trial court found that Fulton did not refuse to insure but that after using reasonable efforts to insure he just was not able to obtain such insurance as was mentioned in the contract.

The findings and conclusions of the trial court above copied concerning Reed's claim for liquidated damages, in the amount of $10,000.00, were fully supported by the evidence, and the court did not err in refusing such claim. Reed's Points numbers 3 to 9 inclusive are overruled.

Reed's 10th point is that the trial court erred in failing to award interest on his damages from the date of the breach of the contract to the date of the judgment.

Reed's letter to Fulton demanding delivery of the two dogs was written November 1, 1961. The contract provided that Fulton should have two weeks after such demand in which to deliver Rio Grande Rose. By letter dated November 15, 1961, Fulton, by his lawyers, refused to deliver the dogs under the contract. Thus, the date of the breach of contract is fixed as November 15, 1961.

The evidence shows without dispute that Rio Grande Rose was through as a racing dog by November, 1961. The trial court found that "the value of the dog (Rio Grande Rose) after her racing days were over is $2,500.00." In his conclusions of law, the court found "for the plaintiff damages in the sum of $2,500.00 for Rio Grande Rose" and "damages for the dog, Milam Choice, in the sum of $100.00."

The judgment, dated September 20, 1963, states that "The Court is of the opinion that Plaintiff is entitled to judgment against the Defendant in the amount of $2,600.00 *together with interest from November 1, 1961, to date of judgment,* and from date of Judgment until paid." (Emphasis ours) Thus it is clear that the trial judge did not include interest in assessing damages as of the date of the breach, and that he intended that the damages assessed by him should bear interest from the date of the breach. However, in the following paragraph, the decree provides for jud~~ ~t only for the

sum of $2,600.00, with interest from the date of judgment at the rate of 6% per annum.

We find no conflict between the statements of the trial court in his findings and conclusions of law as to damages and his express finding in his decree that plaintiff is entitled to interest on the damages from November 1, 1961, to date of judgment, with this exception. Reed's cause of action did not accrue until November 15, 1961, the date of Fulton's attorney's letter refusing to comply with the contract, which date was also two weeks after Reed's demand for delivery of the dog.

In Watkins v. Junker, 90 Tex. 584, 40 S.W. 11, a suit in which the cross-plaintiff recovered damages in a cross-action for breach of contract in failing to furnish dredge boats as stipulated in the contract, the cross-defendant objected to the recovery of interest before judgment on the ground that the damages were unliquidated. The Supreme Court, in holding cross-plaintiff entitled to interest before judgment as part of his damages, said:

"It is true that interest, strictly speaking, exists only by statutory law, but it is likewise true that courts have recognized the fact that compensation for detention of that which is due on account of injury inflicted is an element of damages necessary to the complete indemnity of the injured party; * * *.

"If interest be properly an element of damages in any case, then it is so as a matter of law. * * *

"If one takes possession of the horse of another, and withholds it from the owner, compensation for the value of the use of the horse during the time is a legal right, and no court would hesitate to instruct the jury to so find, and we can see no difference between the right to be compensated for detaining a horse worth $100, and the right to be compensated for the detention of $100, the value of the horse, in case he was killed or converted to the use of the taker."

■ After a full discussion, the court laid down the rule that interest should be allowed as damages when the principal damages are fixed by conditions existing at the time the injury is inflicted. That the rule laid down in Watkins v. Junker, supra, is still the law of this state is demonstrated by Judge Calvert's thorough endorsement of the opinion in Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83.

■ Since the cause of action accrued November 15, 1961, and the trial court found that as of that time Reed's damages were $2,600.00, we hold that the trial court erred in not allowing Reed interest on such damages from November 15, 1961, to the date of the judgment. Watkins v. Junker, supra; State v. Hale, 136 Tex. 29, 146 S. W.2d 731; Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627; Texas Company v. State, supra; Texas & N. O. R. Co. v. Dingfelder & Balish, Inc., 134 Tex. 156, 133 S.W.2d 967; Taylor v. McFatter, Tex.Civ.App., 109 S.W. 395, n. w. h.; McNeill v. Casey, Tex.Civ.App., 135 S.W. 1130, n. w. h.; Humble Oil & Refining Co. v. State, Tex.Civ.App., 162 S.W. 2d 119, writ ref.; Eugene B. Smith & Co., Inc. v. Russek, 5th Cir., 212 F.2d 338.

We have calculated the interest at 6% per annum on $2,600.00 from November 15, 1961, to September 20, 1963, the date of the entry of the judgment, and find it to be $288.16. Add this to the sum of $2,600.00 damages, and the result is $2,888.16. The judgment of the trial court is reformed so as to provide that Reed recover from Fulton the sum of $2,888.16, with interest from September 20, 1963, at 6% per annum.

Costs of this appeal are assessed one-half against Reed and one-half against Fulton.

■ Fulton having filed a supersedeas bond, the judgment rendered against him includes the sureties on said bond, so that Fulton and said sureties shall be liable for

the performance of the judgment against Fulton.

Reformed and affirmed.

NYE, Justice (concurring):

Appellant failed to file the transcript and statement of facts within the time prescribed by Rule 386, Texas Rules of Civil Procedure. In my opinion, the motion for an extension of time filed by the appellant in this Court was not sufficient for this Court to acquire jurisdiction of this appeal. The majority of this Court having determined otherwise that the case is properly before us, I therefore join with the majority in this opinion as it makes proper disposition of the merits of the case.